## PRATT et al. *vs.* DONOVAN.

### APPEAL FROM CIRCUIT COURT, SAUK COUNTY.

Heard August 4, 1859.]                    [Decided January 4, 1860.

*Constitution Law—Replevin—Judgment—Sureties.*

Section 328 of the Code, which provides that when a judgment is rendered against a party in an action of replevin, the judgment may be entered up, as well against the principal as against the surety who shall have signed the undertaking for a return of the property, is not in violation of the constitution, on the ground that it deprives the sureties of notice of the judgment and of the right of trial by jury. COLE, J., dissenting.

A party who signs the undertaking provided for in section 328 of the Code, as surety for the return of property replevied, thereby becomes *quasi*, a party to the suit then pending, and is liable to have judgment entered against him with his principal, upon a failure of the principal to sustain his cause.    COLE, J., dissenting.

A judgment for the defendant entered in replevin under the code, is not erroneous, because it is not in the alternative for a return of the property or the value thereof, in case a return could not be had according to section 187; but the defendant may waive the return and take judgment for the value only.    COLE, J., dissenting.

This was an action for the delivery of personal property unlawfully detained, brought by the plaintiff, Charles C. Pratt, against the defendant, John E. Donovan, James A. Maxwell and Ozias V. Throop, two of the appellants, signed the undertaking of the plaintiff, Charles C. Pratt, to the coroner of Sauk

county, in order to obtain a delivery of the goods in question. The complaint of the plaintiff is in the usual form for the unjust taking and detaining of the property. The answer alleges substantially, that the goods, &c., were the goods of Charles Sanford and Joseph W. Macklin, and not of the plaintiff; that on the 25th day of May, A. D. 1857, in Sauk county circuit court, one Lewis S. Mack recovered a judgment, in due form of law, against said Sanford and Macklin, for the sum of $1,093, damages and costs; that an execution was duly issued thereon, directed to the defendant as the sheriff of the county of Sauk; that said defendant, who is sheriff, by virtue of the execution and his office, did take and levy upon and detain the goods, chattels, &c., complained of in the plaintiff's complaint, as he rightfully might do.

A trial of this issue was had at the February term of the circuit court for Sauk county, 1858, and resulted in a verdict for the defendant, viz:

" We, the jury, do find for the defendant, and that he did not wrongfully take possession of the personal property mentioned and described in the plaintiff's complaint in the action, and did not wrongfully detain the same, as the plaintiff has, in his complaint alleged. And we do further find the property in the defendant, and that the defendant is entitled to the possession of said property; that the same is of the value of $3,432 71. And the defendant having waived the return of said property, we assess his damages at the sum of $1,202 23."

On this verdict the following judgment was entered by said court:

" This action having been brought on for trial and tried on the issue of fact joined therein, and the jury having returned a verdict by which they find that the said defendant did not wrongfully take and does not wrongfully detain the personal property mentioned and described in the complaint in this cause, and the said jury having, by their said verdict, found the property therein in the defendant, and that said defendant is entitled to the possession thereof, and that the value of the same is $3,472 71; and the said jury having, by their said verdict, assessed the damages of the said defendant at the sum of $1,202 23 ; and the said defendant having waived a judgment for the return of said property, and it appearing to the court, from the undertaking of James A. Maxwell and Ozias V. Throop, now on file with the clerk of this court, that they, the said James A. Maxwell and Ozias V. Throop, are sureties

for the said plaintiff in this action.   Now therefore, on motion of C. C. Remington, attorney for the said defendant, it is adjudged by the said court that the property in the goods and chattles mentioned in the complaint of the plaintiff, is in the defendant, and that the defendant is entitled to the posssssion thereof, and that the same are of the value of $3,432 71, and that the damages of the defendant are of the sum of $1,202 23, and the defendant having waived a judgment for the return of said property, it is further adjudged, that the defendant, John E. Donovan, do have and recover the said sum of $1,202 23, as well of the defendant, Charles C. Pratt, as of the sureties, James A. Maxwell and Ozias V. Throop, and the sum of $29 43, costs and disbursements, amounting in the whole to the sum of $1,231 66.

The plaintiff, Charles C. Pratt, and James A. Maxwell and Ozias V. Throop, appealed from this judgment to the supreme court.

*Gregory & Pinney*, for the appellants, objected that the judgment entered under sec. 328 of the Code, against all the appellants, was erroneous; the section was unconstitutional and void, because it deprives the sureties in the undertaking of a constitutional right, that of a trial by jury, and the judgment rendered under this section of the code is not by due process of law.   *Hughs vs. Hughs*, 4 Mon., 43; Smith's Const. Law, 556, 558; Const. of Wis., Art. I, § 5; *Dawson vs. Shaver*, 1 Blackf., 204; *Smith vs. Smith*, 1 How. Miss., 102; *Irvine's Appeal*, 16 Penn. St., 256; *Brown vs. Hummell*, 6 Barr, 86.

The sureties are deprived of their day in court, of the right to make up an issue, of the right of being heard and of producing testimony, and judgment is rendered against them without any notice; this we submit, is not " due process of law."   Sedgwick on Const. Law, 610, 611 and 612; *Green vs. Briggs*, 1 Curtis, 311; *Green vs. James*, 2 Curtis, 189; *Taylor vs. Porter*, 4 Hill, 146.

*J. C. Hopkins*, for the respondent.

*By the Court*, PAINE, J.   This action was commenced under the code, by Pratt, to recover the possession of personal property.   The other two appellants signed the undertaking as sureties, according to section 117, and judgment having

gone for the defendant, was entered against them, together
with Pratt, in pursuance of section 328.   The principal ques-
tion presented on the appeal is, whether this latter section is un-
constitutional and void, for the reason that it deprives the
sureties of notice, and of the right of trial by jury.   If, when
fairly construed, it can be held to have this effect, it is of
course invalid; as the right of every one to notice of proceed-
ings against him, and to trial by jury in an action at law, by
which he may be deprived of his property, is too well under-
stood to need any suggestion from us.

In support of the objection, the following cases are cited:
*Hughs vs. Hughs*, 4th Monr., 43 ; *Dawson vs. Shaver*, 1
Black., 204 ; *Smith vs. Smith*, 1 How., (Miss.,) 102 ; *Ervine's
Appeal*, 16 Penn. St. Rep., 256; and *Brown vs. Hummell*, 6
Barr, 86.

In the first of these cases the judgment was entered against
the sureties on an injunction bond, under an act which had
been decided unconstitutional twenty years before, which had
been acquiesced in without question.   The case was decided
upon that ground, and the court intimate that were it *res
nova*, their decision might have been different.   In *Dawson
vs. Shaver*, the proceeding was by motion upon notice against
the sheriff and his sureties, for money collected and not paid
over.   The court held the statute constitutional, but that the
parties would be entitled to make up an issue, and have a
jury trial, as the act did not prohibit it.   In *Ervine's Appeal*
it was held that the legislature had no authority to enact a
law authorizing the orphan's court to appoint a trustee to sell
certain real estate, belonging to parties of full age and *sui
juris*, against their consent, which is simply an affirmance of
the general principle that no man shall be deprived of his
property without due process of law, and was clearly right.
And the case in Barr is no more than an assertion of the
same general principle.

But if this judgment is to be sustained at all, it must be upon some ground which does not conflict at all with this general principle. And the only ground upon which it can possibly be placed is, that while the right is conceded, it is competent for the party himself to waive it, and voluntarily consent that judgment may be entered against him, without a jury trial, or any trial. This right of waiver, if properly manifested, will not be questioned. Judgments are entered upon cognovit, by stipulation, or by oral consent of the party, or of counsel acting for him; and their validity is not questioned. And we think the only question really involved here is, whether the signing of the undertaking by the sureties can be fairly construed into a conditional consent to the entry of judgment against them, in case judgment should go for the defendant. And I think it can. But in coming to this conclusion, I make a clear distinction between this case and that of *Smith vs. Smith,* 1 How., (Miss.,) 102, which I think to be sound law. In that case, judgment was entered under a statute allowing any one who had paid money for another as security, to have a judgment entered in his favor, on motion, without trial by jury. The court held the act void, and held it so justly. *The right of entering judgment under that statute was not based upon any act of the defendant which, by any legitimate reasoning, could be construed into a waiver of his right of trial, or a consent to the entry of judgment against him.* The most that he had done, if any thing, was to incur a debt, by reason of the plaintiff's having paid money for him as surety. And whether he had done this or not, was the very question upon which he had a right to trial, and the law could not assume that he had done it, even if the actual fact could be construed into a waiver of his right to trial, or a consent to judgment. But I go further, and hold that it is not competent to enact a law that judgment may be rendered without trial, upon every ordinary liability or debt between

man and man, the contracting of which did not connect the party with any judicial proceeding, and then to say that any party who incurred such debt or liability should be held to waive his right to trial by jury. True, it might be said that he contracted the debt, knowing that the law authorized a judgment without trial, and so waived his right to trial. But the answer is, that he knew, also, that the constitution existed, invalidating any law depriving him of the right; and he was not-bound to stop doing business, for fear that if he incurred a debt under such a law, he should be held to have waived his right; but might incur the debt, and then, with much more reason, be held to have intended to insist on his objection to the law, than to have waived the right secured to him by the constitution. Overlooking, therefore, the objection that such a law would assume that the party did incur the debt, which was the very thing to be tried, yet even if he did, there is nothing in that which, by any fair reasoning, can be forced into a consent to the entry of judgment against him without trial; and if this were not so, it would be very easy for the legislature to deprive everybody of the right of trial by jury, as to future transactions, by enacting that every creditor should be entitled to judgment, on motion, without trial, and then say that every one who contracted a debt, or incurred a liability, under such a law, should be held to have waived his right. It may be that the *Bank of Columbia vs. Oakley*, 4 Wheat., 235, would go to this extent; for I confess that I do not readily perceive any distinction between the law there in question, which authorizes a summary judgment on notes expressly made negotiable at the bank, upon the ground that a party making such a note had waived his right, and a general law, authorizing a summary judgment on a debt incurred in any other manner. But if the case should be held to go so far, I, for one, could not consent to follow it.

But I think this case is entirely different, and that the in-

curring of an ordinary debt, which does not connect the party in any way with any suit or legal proceeding, is clearly distinguishable from the signing of a bond or undertaking, in a suit already commenced. By the latter, under a statute like the one under consideration, the surety becomes a *quasi* party to the suit. And he may well be said to have consented conditionally to the entry of the judgment against him. By their undertaking they are bound for "the prosecution of the action," and by entering into it, and thus connecting themselves with the suit, they consent to all the consequences to which such a connection by law subjects them. By their very undertaking, their right depends on the result of the suit as to their principal, and the trial which determines his right, determines theirs. They have substantially their day in court, and consent that their fate shall abide that of their principal.

And I think it is no objection to this view to say that the undertaking might be forged. The decision is placed upon the fact that the undertaking, assuming it genuine, fairly amounts to a consent to the entry of judgment. And we think the validity of the law is to be tested on this assumption. And if correct in the position that the undertaking is a consent, the fact that it might be forged does not invalidate the law. A *cognovit* might be forged; an attorney might, without authority, consent to a judgment, or one person might, by collusion, be sued for another and consent to judgment; in all such cases the party wronged would undoubtedly be entitled to his remedy on a proper application to the court. But we think the possibility of such a forgery or false personation, does not invalidate the law authorizing judgments by consent. The law proceeds on the assumption that the consent is genuine, and on that assumption its validity is to be determined.

Though this undertaking is not strictly a recognizance, yet we think it much in the nature of one. And the case of *Gildersleeve vs. The People*, 10 Barb., 35, where the question

was upon a recognizance, supports the view we have taken. So also does that of *Lewis vs. Garrett's Administrators*, 5 How. (Miss.) Rep. 434; and even goes farther than we go here. For there judgment was entered on motion against the sureties on a sheriff's bond. And the counsel who contended against the validity of the law, rested his argument upon the distinction we have adopted, between bonds given in a suit commenced, by which the party connected himself with that suit, and those of a different character, conceding that on the former class, the summary judgment might be entered, p. 451. Upon the whole, we are therefore of opinion that sec. 328 of the code is not unconstitutional for the reason urged.

But another objection is made, which is, that the judgment is erroneous, not being in the alternative for a return of the property or the value thereof, in case a return could not be had according to sec. 187 of the code. And in support of this position the case of *Dwight vs. Enos*, 5 Seld., 470, is relied on, which, it must be conceded, fully sustains it. But after a most careful examination of the matter, we are constrained to place a different construction upon this section from that given by the New York court of appeals in this case, so far as it relates to the judgment which may be taken by the defendant. The court there, after alluding to the former provision of their Revised Statutes, which was the same as sec. 1, chap. 42, Gen. Laws, 1854, of this state, say that this left the defendant in such cases, " entirely at the option" to take a judgment either for the return or the value, as he might see fit. They then proceed, " The significant words then, ' in case a return cannot be had' incorporated into sec. 277 of the code, are new. Are these words to be rejected as surplusage? The words are clear and explicit, and have a plain and direct application to the subject matter of the section. Some meaning I think should be given to them." And accordingly, on the force of these words alone, the court held that this section of the code

abolished the previous distinction which had existed between a plaintiff and defendant in this respect, and deprived the latter of the option as to the form of judgment which he previously had. But in coming to this conclusion, they seem to us to have entirely disregarded other words, in the section, which are quite as "significant" as those upon which their decision is based. The provision is as follows: "If the property have been delivered to the plaintiff, *and a defendant claim a return thereof,* judgment for the defendant may be for a return of the property, or the value thereof, in case a return cannot be had," &c. Now it seems evident from this language that the entire provision as to the alternative judgment, is dependent on the fact that the defendant "claims a return." The clause clearly implies that it is optional with the defendant to "claim a return" or not, as he pleases, where the property has been delivered to the plaintiff, and it simply provides for the alternative judgment, where he *does* claim it, without determining what it should be when he does not. With this view, full effect is given to the words, "in case a return cannot be had," because they were clearly necessary to protect the right of the defendant, where he elected to have a return, if, for any reason, it could not be had. And this effect is given them, entirely consistent with the proper effect of the other words implying the right of the defendant to claim a return or not, at his option. But the court of appeals holds that the judgment must be for the return in all cases, and for the value, only where the return cannot be had. And with this construction, what effect is given to the words, "and a defendant claim a return thereof?" None at all, it seems to us. Those words clearly import an option for him to claim it or not; this construction destroys such option, and compels him to take a return in every instance where it can be had, whether he desires it or not.

If we look at the former provisions of the law, we think it

Pratt et al. vs. Donovan. .

supports our construction instead of the other. For, as the court of appeals concedes, before the adoption of this section a distinction existed between the plaintiff and defendant, and while the former was confined to his alternative judgment, the latter had an unqualified right of electing an alternative judgment, or an absolute one for the value. When, therefore, this section of the code retains language which clearly implies this same distinction, and recognizes the same right of election, if there could be any doubt of their intent, the fact that the right existed before would support that construction which preserves the right, rather than that which destroys it. Our construction gives due effect to all the language of the provision; the other seems to us to ignore a most significant portion of it.

The court of appeals also relies on the provision of section 289 of their code, sec. 199 of ours, in relation to the form of execution for the delivery of personal or real property. But this seems to us to furnish no support for their construction, because it only shows that where the execution *is* for the return, it is in the alternative. This must, of course, be so. And if the defendant "claims a return," his judgment must be in the alternative, and his execution also. But does this form of the execution, which could only issue on such a judgment, tend at all to show that the defendant was bound to have a judgment for a return whether he claimed it or not? If it does, we are unable to see it, but think, on the contrary, that it is entirely consistent with our construction, which gives the defendant the right to elect, showing only what his execution would be, where he elected a return. If he did not claim a return, his judgment would be a personal judgment, and his execution would follow that.

We think, therefore, that section 1, chapter 42, laws of 1854, was not inconsistent with this section of the code, and being saved by section 365, was in force when this judgment

was entered; and that under it, the jury might properly assess the value of the interest of the defendant in the property, as they have done in the verdict. lt is true they call it his damages, but as they expressly base that finding on a waiver of the return, it is clear that it was intended to cover the entire right or interest which the defendant had by virtue of his execution, and he took judgment for no more.

No other question being made, we think the judgment must be affirmed, with costs.

Cole J. dissented from the whole of the opinion in this case, but has not written a decision.