HEARD APRIL TERM, 1872.

PALMER *vs.* RAILROAD.

When a civil action is called for trial, the array of Jurors cannot be objected to on the ground of defect in the title to his office of the Jury Commissioner, who acted in the selection of the Jurors—as, for instance, that the appointment to the office had not been confirmed by the Senate.

Plaintiff was a passenger on the cars of defendant, a railroad company, under a contract to carry him from Charlotte, N. C., to Augusta, Ga., with the privilege of stopping at Columbia. His ticket was a through ticket from New York to Savannah, with coupons for the different roads—for defendant's road there being two, one from Charlotte to Columbia, and one from Columbia to Augusta. On the passage from Charlotte to Columbia, W., the conductor on the train detached both coupons, and gave plaintiff a conductor's check, which by the rules of the Company and the general usage of railroads, was good only for that trip. Plaintiff stopped at Columbia, and the next day took the train for Augusta, in charge of J., another conductor. On this train his ticket was again demanded, and on his exhibiting the conductor's check, and his ticket without the coupon, to Augusta, was informed by J. that they did not answer, and that he must either pay the fare to Augusta or leave the train. He failed to pay, and was ejected from the train : *Held*, that the act of J. in ejecting plaintiff from the train, was wrongful, and that defendants were liable in damages therefor.

Plaintiff's rights grew out of the terms of his contract, giving him the privilege of stopping at Columbia. He did not owe defendants the duty of giving notice of his intention to stop, or of making enquiries as to the force and effect of the conductor's

check; and if he failed to give such notice or make such enquiries he was guilty of no negligence of which defendants had the right to complain. (On the contrary, the duty of taking notice of and regarding his right to stop, was owed by defendants to him, and when conductor W. detached the coupon from Columbia to Augusta, he should have delivered in its place some token having the same force and effect. )

A corporation may be made to respond in exemplary damages for the misconduct of its agent—as, for instance, a railroad corporation for the misconduct of a conductor, in ejecting a passenger from the train.

BEFORE MELTON, J., AT COLUMBIA, OCTOBER TERM, 1871.

This was an action by George W. Palmer, plaintiff, against the Charlotte, Columbia and Augusta Railroad Company, defendants—a railroad corporation owning a continuous line of road from Charlotte, N. C., to Columbia, S. C., and thence to Augusta, Ga.,—to recover damages for wrongfully ejecting the plaintiff from defendants' cars.

When the jury was called defendants objected to the whole array, on the ground that the appointment of the Jury Commissioner who acted in the selection of the jurors, though made by the Governor, had not been confirmed by the Senate, according to the Act of Assembly. This fact was admitted, but the Court overruled the objection, and the defendants excepted.

The plaintiff gave evidence tending to show that early in June, 1871, he purchased from the defendants' ticket agent, in New York, a through ticket from New York to Savannah, Georgia, which, after all the coupons, except the last, were detached, was in words and figures, as follows:

"Read the contract below—baggage limited to 100 pounds— Good until                                        186      , inclusive, for one passage. New York to Savannah, Georgia, via Baltimore, Washington, Richmond, Weldon, Raleigh, Columbia, and Augusta.

"☞Coupons are good until date, after which they will be received at their par value in part payment of local fares, but will be forfeited if detached from the ticket. Passengers are privileged to stop only at points named on the coupons, and are prohibited from taking anything as baggage but their wearing apparel. Eighty pounds of baggage only allowed to each passenger. All over eighty pounds to be paid for. The company limit their responsibility for baggage to a dollar per pound, and will not be liable for any amount beyond a hundred dollars, except by special contract. Each company will be responsible for the loss and damage only on its own line. Passengers are required to keep their

entire persons inside of the cars while in motion.   Passengers must claim their baggage upon arrival at the point to which they have it checked.   If not taken on its arrival, storage will be charged.   Issued by the New Jersey Railroad."

" Augusta to Savannah, Georgia,

"Via Central R. R. of Georgia."

That when the plaintiff reached Charlotte there were, besides the coupon from Augusta to Savannah, two others on the ticket, one from Charlotte to Columbia, and one from Columbia to Augusta; that, on Friday, June 9th, the plaintiff got on the train of defendants at Charlotte, and, in a few minutes after it started, he was called on by the conductor on the train, named Wolfe, for his ticket; that he produced it, and the conductor tore off the two coupons from Charlotte to Columbia, and from Columbia to Augusta, and in place of the two coupons, delivered to the plaintiff a conductor's check, in words as follows:

"Job printing of all kinds neatly ⎰ Charlotte, Columbia and Augusta
executed   at   Observer's   office, ⎱          Railroad.
Charlotte, North Carolina.            Please keep your feet off of the seats.
                                       M. M. WOLFE, Conductor."

On the reverse side were stations and distances.

That plaintiff informed conductor Wolfe that he desired to stop at Columbia, and was told by him that the check would allow him to do so; that plaintiff stopped at Columbia, remained there all night, and the next day, June 10th, took defendants' train for Augusta, and after it had proceeded about four miles he was called on by the conductor, named Johnston, for his ticket; that he exhibited the check given to him by conductor Wolfe, and the ticket, as returned to him by that officer; that he was told they would not answer, and that he must pay the fare from Columbia to Augusta or leave the train; that he protested against being compelled to leave—said he had no money with him, that he would pay when he got to Augusta, and offered to pledge his baggage as security; that the conductor then stopped the train and compelled him to leave it in a swamp, though he asked to be taken to the next station; that his baggage was put off at the same time; that he walked back to Columbia, taking his baggage with him—got wet in a thunder storm, and became much exhausted and feverish from the exposure and weight of the baggage; that the next day he again took de-

fendants' train for Augusta, and was allowed to pass on his ticket and conductor's check without paying the fare.

For the defendants, evidence was given tending to show that the plaintiff did not inform conductor Wolfe that he desired to stop in Columbia, and was not told by the latter that the check would allow him to do so; that the conductors on the road were under instructions to detach, before reaching Columbia, both coupons from all through tickets to which double coupons for the road were attached, and to deliver to each passenger wishing to stop at Columbia a "layover ticket;" that the general ticket agents had been instructed to issue no tickets with double coupons for the road; that, by the usage and custom of railroads, a conductor's check was regarded as nothing but a memorandum for himself, was good only for the train on which it was given, and was never recognized by another conductor; that when plaintiff's ticket was shown to conductor Johnston the coupon from Augusta to Savannah had been torn off and was pinned to the ticket; that there was no swamp where plaintiff was compelled to leave the train, and that the day was clear, with no indications of rain; that the conduct of the conductor was not harsh, oppressive or cruel; that there was no house at the next station on the road, and that the weight of plaintiff's baggage was more than eighty pounds.

The following extract from the case containing exceptions shows the points made by the appeal:

At the conclusion of the charge, the Court proceeded to charge the jury upon the instructions submitted in writing on the part of the defendants.

*2d Exception.* The first instruction asked for by the defendants is in words as follows: "That, without some notice to the contrary, conductor Wolfe was justifiable in assuming that plaintiff intended to go to Augusta without stopping at Columbia." Upon which the Court said: "Gentlemen of the jury, I decline so to charge, and charge to the contrary;" to which the defendants excepted.

*3d Exception.* The third instruction asked for is in these words, to wit: "That exemplary damages cannot be allowed in case of a passenger being wrongfully expelled from the cars of a railroad company, unless it be shown—

1st. That improper violence was used; *or*;

2d. That circumstances of aggravation existed; *or*,

3d. That there was an intent to invade or disregard the rights of the plaintiff; *or*,

4th. That the expulsion did not arise from an error in judgment on the part of the conductor ; *or*,

5th. That the plaintiff was not in any way in the wrong ; *or*,

6th. That the expulsion was with a design wilfully to injure the plaintiff."

Upon which the Court said : "Upon the first subdivision I so charge you, and add, that if the railroad company was in the wrong, the act of compelling the plaintiff to leave the train was improper violence. Upon the second subdivision I charge you, that before you can find exemplary damages, you must find some circumstances of aggravation, and, in this connection, you will take into consideration the evidence as to the storm, the humiliation, and the force used, and all the circumstances attending the transaction. The third subdivision of this instruction does not indicate the necessary incidents to exemplary damages, I therefore decline so to charge ; wrong may be done by a railroad company to a passenger without the intent on the part of the conductor to disregard or invade his rights. In regard to the fourth subdivision of this instruction, I charge you that the Railroad Company is responsible for the acts of the conductor done in the line of his duty as such. It is true the act of a conductor, arising from an error of his judgment, may carry him far beyond the line of his duty, and beyond the scope of his instructions ; but there is no pretence of such an error in this case—no assumption that the wrong done by either conductors Wolfe or Johnston, arose from an error of judgment. In reference to the fifth subdivision of this instruction, I charge you, that if the plaintiff was in the wrong, and contributed to the result of which he complains, he is not entitled to any damages whatever. I have already indicated, however, that he was not in the wrong. If the plaintiff had been ejected from the train because of his seeking to carry extra baggage, and refusing to pay freight thereon, he might perhaps be considered to have been in the wrong ; but the amount of his baggage does not appear to have been considered in the transaction at the time ; and I may add, that the fact that a passenger happens to carry more baggage than is allowed by the regulation, should not subject him to expulsion from the train, without demand for extra charges. Such a doctrine this Court cannot tolerate for one instant. In regard to the sixth subdivision of this instruction, I charge you, that there may have been no wilful design on the part of this corporation, or any of its agents, to injure the plaintiff; nevertheless, you may find exemplary damages."

To the whole of which char ge, on the said third instruction, the defendants excepted.

*4th Exception.* The fifth instruction asked for by the defendants was in words as follows: " That in case the plaintiff was wrongfully expelled from the cars, he can recover for no loss not resulting immediately from his expulsion, unless such loss has been specially laid in his complaint." Upon which the Court said: " I decline so to charge you." To which the defendants excepted.

*5th Exception.* The sixth instruction asked for is in these words, to wit: " That in case the plaintiff was wrongfully expelled from the cars, he can recover no damages for losses that are remotely consequential." Upon which the Court said: " If you find that this plaintiff is entitled to compensatory damages only, then you cannot take into consideration as an element of that calculation any losses which are remotely consequential; if the damages be exemplary, you may do so." To which the defendants excepted.

*6th Exception.* The tenth instruction asked for is in these words, to wit: " That if the jury are satisfied that by the usage and custom of railroads in the United States, a conductor's check is good only upon the train upon which it is given, then it was an act of negligence on the part of the plaintiff not to make inquiry of the conductor, who gave him the check, whether it would be good for another train." Upon which the Court said : " Gentlemen of the jury: this instruction undertakes to construct the case in hand. Ordinarily, I think it is the business of the passenger to inquire in reference to the force and effect of the conductor's check. I do not think that this has a direct bearing upon the case in hand. I charge you, that the plaintiff in this case was not bound to make an inquiry of the conductor, and was, therefore, not guilty of negligence; the peculiar contract between him and the railroad company, devolved upon the conductor, not upon the passenger to make the inquiry. I do not think that the instruction applies to this case as made out by the evidence." To which the defendants excepted.

*7th Exception.* The eleventh instruction asked for by the defendants is in words as follows: " That if the plaintiff had a separate coupon from Charlotte to Columbia, and another from Columbia to Augusta, and he intended at the time he was called upon by the conductor for his ticket to stop over at Columbia, it was an act of negligence in him to allow his coupon from Columbia to Augusta to be torn off." Upon which the Court said: " I decline so to charge, and charge the contrary." To which the defendants excepted.

*8th Exception.* The twelfth instruction asked for is in these words, to wit: "That if the plaintiff had a separate coupon from Charlotte to Augusta, then it was an act of negligence for him to stop over at Columbia without having been assured by the conductor that the check given him would pass him on another train." To this, the Court said: "I decline so to charge." To which the defendants excepted.

*9th Exception.* The fourteenth instruction asked for by the defendants is in words as follows: "That the regulation of the defendants requiring a passenger with a through ticket, who gives up his coupons to a point beyond another point, at which he wishes to stop, to obtain from the conductor a lay-over ticket, is a reasonable regulation." Upon which the Court said: "I decline so to charge, unless the regulation be accompanied by a further regulation, that the conductor shall inform the passenger." To which the defendants excepted.

*10th Exception.* The seventeenth instruction is in these words, to wit: "That in selling a through ticket to plaintiff, at New York, with two coupons between Charlotte and Augusta, in June, 1871, after orders from Mr. Dorsey, the ticket agent of the defendants, in July, 1869, to discontinue the sale of such tickets, the general agency at New York acted beyond the scope of its authority, and the defendants are not liable for any damage resulting therefrom to the plaintiff." Upon which the Court said: "I decline so to charge. I can recall no testimony to the effect that Mr. Dorsey had done any such thing. This witness did say that he requested the agents of the company to change the coupons of the Charlotte and Columbia and Columbia and Augusta Railroad Companies; but he did not order them at once to stop selling the tickets with two coupons, and that their arrangement was at an end, so far as such tickets were involved. The fact for this instruction has not been put in evidence, and it is therefore irrelevant; if it were relevant, however, I would decline so to charge." To which the defendants excepted.

*11th Exception.* The eighteenth instruction asked for by the defendants is in words as follows: "That the defendants cannot be held liable for a failure to perform any contract imposed upon them by a through ticket, if no notice was in any way given them that the plaintiff desired them to perform that particular part of their contract." Upon which the Court said: "I decline so to charge." To which the defendants excepted.

*12th Exception.* The twentieth instruction asked for is in these

words, to wit: "That the plaintiff having his baggage checked at Petersburg for Columbia is evidence only of the intention of the plaintiff to stop at Columbia, but not any notice to conductor Wolfe of that intention." Upon which the Court said: "This is true. Since it is desired, I will so charge. The instruction, however, has no bearing upon the case." To which the defendants excepted.

13*th Exception.* The twenty-second instruction asked for by the defendants is in words as follows: "That the taking up of the two coupons and the giving of a conductor's check by the conductor was sufficient to put the plaintiff, as a man of ordinary prudence and experience, upon the inquiry, if he was thereby secured in his right to stop over at Columbia." Upon which the Court said: "I decline so to charge, and charge the contrary." To which the defendants excepted.

The Court then proceeded to charge the jury upon the instructions upon the part of the plaintiff.

14*th Exception.* The seventh instruction asked for by the plaintiff is in words as follows: "That the plaintiff was not bound to know any regulations of the defendants which were not brought to his notice; but, on the contrary, he had a right to accept the said conductor's check as an equivalent for the original coupons, and entitling the plaintiff to the same rights and privileges; and if in consequence of the substitution of the said conductor's check for the original coupons, any injury, inconvenience, delay, or loss, occurred to the plaintiff through the subsequent action of the defendants or their agents, the defendants are answerable in damages." Upon which the Court said: "I decline to charge in the exact words of this instruction; there are certain regulations of railroad companies which a passenger is bound to know; those, for instance, which are so uniform, universal, as to become, as it were, a part of the common law of travel, which any passenger of any experience must be presumed to know. I do charge you, however, that the plaintiff was not bound to know the regulations of the defendants in regard to these coupons: that is to say, the instructions given to the conductor to tear both of them off at the same time. On the contrary, it was the duty of the conductor to inform the plaintiff, without any inquiry on the plaintiff's part, and to put in his hands such evidence as would have availed to carry out the contract between them. If in consequence of the substitution of the conductor's check for the original ticket, this plaintiff was ejected from the cars, the defendants are answerable in damages." To which the defendants excepted.

15th Exception. The eighth instruction asked for by the plaintiff is in these words, to wit: "That the plaintiff is entitled to recover damages for the loss of time, injury to his person, extra expense, injury to his feelings, and consequent illness, and bodily or mental discomfort and pain, resulting from his ejection from the defendants' cars; and of the amount of damages adequate to compensate for the injuries received, the jury are the judges, subject to the general restriction that they shall not be excessive, or out of due proportion to the injuries received." Upon which the Court said: "I cannot directly charge upon this instruction, framed as it is. Indeed, I am at a loss to know why it is asked for. I charge you that the plaintiff is entitled to recover damages for loss of time, injury to his person, extra expense, injury to his feelings, and consequent illness, and bodily or mental discomfort and pain, resulting from his ejection from the defendants' car; and of the amount of damages adequate to compensate for the injuries received the jury are judges. If you conclude to find vindictive damages or exemplary damages, they should not be out of proportion to what, in your deliberate judgment, you may deem necessary as compensation for the plaintiff, and for the purpose of an example to the defendants." To which the defendants excepted.

16th Exception. The Court further charged the jury "that when the conductor took up both of the coupons without inquiring of the passenger if he desired to stop at Columbia, without informing him what the particular regulations of the railroad company were which required the conductor to take up both the coupons, he carried out a regulation, which regulation, without such inquiry, was unreasonable; that to take up two coupons without giving the passenger such notice as to enable him to obtain a lay-over check for Columbia, rendered the company liable in damages." To which the defendants excepted.

17th Exception. The Court further charged the jury "that in finding exemplary damages, they are restricted as to the amount only by the pleading; and if exemplary damages be found in this case the verdict may be to any amount, from one cent. to fifteen thousand dollars, the limit in the pleading." To which the defendants excepted.

The jury found a verdict for the plaintiff for three thousand dollars, and judgment having been entered thereon the defendants appealed.

*Rion,* for appellants, filed a brief containing his points and authorities, as follows:

*First Exception.*—As to jury.

The Jury Commissioner "shall be appointed by the Governor and confirmed by the Senate."—Sec. 4, Act 1871, 14 Stat., 690.

Where a Statute provides how an office must be filled, there is no "color of title," nor is the person an "officer *de facto*," unless the *form* of the election or appointment provided has been followed.— *People* vs. *Alberton,* 8 How. Pr., 364. And in such case all his acts are *void.*—*People* vs. *Carter,* 29 Barb., 208.

No acts of a *de facto* officer are valid when *it is known* that he is not legally qualified.—*The King* vs. *Corporation of Bedford Level,* 6 East, 356.

Could, then, the other two of the Board act? The Jury Commissioner, County Auditor, and Chairman of the Board of County Commissioners shall constitute the Board.—Sec. 4, same Act. Where a Board is composed of *integral parts,* it has no authority to act, unless all those integral parts are present.—A. and A. on Corp., Sec. 510; *Grindley* vs. *Barker,* 1 Bos. & Pul., 236 and 242; Sedgwick on Stats., 387, exactly to the point, as, likewise, Matter of *Palmer,* 31 How. Pr., 51.

*Third Exception.*—The worst case made out by the plaintiff is, that, owing to an improper regulation of defendants, the conductor was required to take up both coupons (from Charlotte to Columbia, and from Columbia to Augusta,) at one time, and on this occasion the conductor failed to give plaintiff a lay-over ticket.

In this connection, it will be observed that conductor Wolfe positively says he did not know that the plaintiff intended stopping at Columbia.

The conduct of conductor Johnston, taking the case as he found it, in expelling the plaintiff from the train, was considered justifiable by the Court and plaintiff's counsel.

I would also remark that the question of whether the company was in the wrong at all, depends upon *a matter of opinion* as to whether it was Palmer's duty to inform Wolfe that he intended stopping at Columbia, or Wolfe's duty to make the necessary inquiries of him; upon which question all our expert witnesses throw the duty upon Palmer.

*a.* There was no improper violence.

*b.* Nor circumstances of aggravation.—Sedgewick on Dam., 458,

"American Cases," (520) 461, "Louisiana," (523), 462, (524), 463, (524), 464, (526) 520, (602) 522, (605) 562, (659).

c. No intention to invade rights of plaintiff, or design to wilfully injure the plaintiff.— Wallace vs. The Mayor, &c., of N. Y., 18 How., P. R. 172 (sixth a. b.) and 176; Sedgwick on Dam., 94, (101), 455, (517), 458, (520), 461, (522), 466 note, (528, 530, 531, 532, 533, 718), 547, (639), 550, (643), 552, (648); Goddard vs. Grand Trunk R. R., 57 Maine, 202; Atlantic & Great Western R. R. vs. Dunn, 19 Ohio, 162; Millard vs. Brown, 35 N. Y., 300; 21 How., (U. S.) 213.

d. If conductor Wolfe was in the wrong, (and I admit improper regulations are no justification,) this arose from an error in judgment in taking up both coupons at once.—Sedgwick on Dam., 466, note, 532, fifth ed.

e. The plaintiff was in the wrong.

He had a torn through ticket, which of itself justified his expulsion.

His being exhausted by the walk was by his own wrong in having extra baggage in the passenger car over what the contract of the through ticket allowed him.

He certainly could not have distinctly informed conductor Wolfe that he desired to stop at Columbia.

To recover, the plaintiff must be without fault.—Burke vs. Broadway and 7 Avenue R. R. Co., 34 How. P. R., 239, 246, 249; Sedgwick on Dam., 468, (534).

Fourth Exception.—See 4 N. Y., 130. " Damages, natural but not necessary result of the injury, must be laid, &c."

Fifth to Sixteenth Exception.—The points made in the other exceptions and the testimony show that this was not a case for exemplary damages.

Seventeenth Exception.—This charge "took the bridle off the jury."

The damages allowed ought to have been direct and natural consequences of the wrong.—Sedgwick on Dam.; Crane vs. Petrie, 6 Hill, 522.

Damages not resulting immediately from injury cannot be recovered, and cannot be proved unless specially laid in declaration.— 2 Am. R. R. Cases, 378—injury was from negligence —arm broke— " must necessarily flow from principal fact "—excluded proof that plaintiff had a large family dependent upon him for support.— Foard vs. Atlantic & N. C. R. R. Co., 8 Jones, 235, (N. C., 1862).

When R. R. Co. guilty of negligence in not forwarding a piece of machinery to plaintiff, whereby his mill kept idle—held that the measure of damages was not what the mill would have made if not kept idle, but the legal interest on capital, hire of hands kept idle, cost of sending for missing machinery, and other damage which was the direct and necesary result of defendants' negligence.

*Chamberlain,* contra :

The Jury Commissioner was an officer *de facto,* and as such his acts were valid.—*McBee* vs. *Hope,* 2 Sp., 138 ; *State* vs. *Hill,* 2 Sp., 150 ; *State* vs. *Lyles,* 1 McC., 239 ; *State* vs. *Hutson; Kottman* vs. *Ayer,* 3 Strob., 146 ; *State* vs. *Maberry,* 3 Strob., 146 ; *People* vs. *Collins,* 7 Johns, 549 ; *Wilcox* vs. *Smith,* 5 Wend., 231 ; *People* vs. *Stevens,* 5 Hill, 615 ; *People* vs. *Cook,* 8 N. Y., 67 ; 3 Black. Com., 368. The title of such an officer cannot be enquired into collaterally.—*Hill* vs. *Luther,* 13 Wend., 491.

Upon the 3d and 6th subdivisions of the 3d exception, he cited Sedg. on Dam., 34, 122, 517, 519, 520, 526 and authorities referred to; 2 Red. on Rail., 222, 224 ; *Hays* vs. *Caboes,* 3 Barb., 42 ; *Krom* vs. *Schoonmaker,* 3 Barb., 647 ; *Burr* vs. *Pettibone,* 4 Comst., 300 ; *Huckle* vs. *Money,* 2 Wils., 205. Exemplary damages may be given, though there was no intent to invade or disregard the rights of the plaintiff, or design willfully to injure him. Such intent, where it exists, may increase the amount of damages, but is not necessary to their being given.

Upon the 5th exception he cited *Coleman* vs. *Southwick,* 9 Johns., 45 ; *Southwick* vs. *Stevens,* 10 Johns., 443 ; and upon the 9th, *Bebee* vs. *Ayers,* 28 Barb., 275.

Oct. 25, 1872. The opinion of the Court was delivered by

WILLARD, A. J. The defendants' first exception involves the proposition that under an objection to the array of jurors, it is competent to enquire into the title of the Commissioner, by whom the jury was selected, to the office exercised by him. The existence and authority of the office are not questioned, but the title of the incumbent is the only matter in dispute. The validity of the array does not depend on the title of the Jury Commissioner to his office. While actually exercising the powers of the office, his official acts must have full force and effect.

The remaining exceptions involve these general inquiries, namely :

1st. What is the true construction of the contract expressed or implied by the passage ticket purchased by plaintiff?

2nd. Is that contract affected by any thing in proof as to the general custom of railroad travel, or the particular rules and regulations of the defendants?

3rd. Assuming the act of the conductor in removing the plaintiff from the train to be unlawful and moved by malice or recklessness, can the defendant be held responsible therefor in exemplary damages?

The plaintiff purchased a ticket of defendants' agents in New York, by the terms, entitling him to a passage over the defendants' railroad from Charlotte to Augusta, with the privilege of stopping over at Columbia. The ticket contained separate coupons from Charlotte to Columbia, and from Columbia to Augusta. The conductor, between Charlotte and Columbia, separated from the ticket both of these coupons, retaining them, and giving to the plaintiff a conductor's check. Plaintiff stopped over at Columbia, taking, on the next day, a train under charge of a different conductor from the one whose check he held. Plaintiff was expelled from the train by its conductor, on the ground that the conductor's check held by him did not entitle him to a passage in that train from Columbia to Augusta, and of his failure to pay the proper fare from Columbia to Augusta he demanded of him.

The second exception brings up the following instruction asked for by defendants, namely: "That, without some notice to the contrary, conductor Wolfe was justifiable in assuming that the plaintiff intended to go to Augusta without stopping at Columbia." The Court refused this charge, and charged the contrary.

If this instruction had any bearing in the case it would result from the proposition that the plaintiff was bound to notify the conductor at the time he removed the coupons to Augasta that he intended stopping over at Columbia. According to the true construction of the contract, the plaintiff was at liberty to form the intention of stopping over at Columbia at any time before the train left that place for Augusta. The instruction, on the contrary, assumes that that intention should have been not only formed, but expressed, at the time the conductor removed the coupons between Charlotte and Columbia.

The conductor was bound to assume that the plaintiff intended to retain the right conferred by his contract, and in taking from him the evidence of such right, to place in his hands some token that would, under the rules and regulations of the defendants, be equivalent to the possession of the coupons removed.

The instructions asked would have tended to mislead the jury as to the nature of the rights of plaintiff under his contract, and was properly refused.

The sixth exception is directly connected with that just consid-ered. The defendant asked an instruction, "that if the jury are sat-isfied that, by the usage and custom of railroads in the United States, a conductor's check is good only upon the train upon which it is given, then it was an act of negligence on the part of the plaintiff not to make enquiry of the conductor, who gave him the check, whether it would be good for another train." The Court re-fused this instruction, and charged "that the plaintiff, in this case, was not bound to make an inquiry of the conductor, and was, there-fore, not guilty of negligence; the peculiar contract, between him and the railroad company, devolved upon the conductor, and not upon the passenger, to make the inquiry. I do not think that the in-struction applies to this case as made out by the evidence."

It has already been said that it was the duty of the conductor, in taking up the coupons, to place in the hands of the passenger some token that would have the force and effect, under the rules and regulations of the company, of the coupons themselves. Pri-marily, the passenger had the right to hold the evidence of his con-tract until it had been performed on the part of the defendants. Assuming that this right was modified, by the rules and regulations of the road, to the extent of rendering it proper for the conductor to demand that the evidence of his right, as to any portion of the journey secured by the ticket, should be surrendered before such portion was completed, the ground on which the reasonablenes of any such regulation must rest, is the necessity and propriety of such a course for the protection of the company against imposi-tion.

Having, therefore, demanded of the passenger the proper evi-dence of his contract for their own benefit, they were bound to put him in as good a position as if he had not parted with such evidence. The common practice is to substitute a conductor's check for the coupons taken up. This conductor's check is a mere token. It need not express the terms of the contract under which the passenger is conveyed. The passenger has the right to assume, without examination or enquiry, the due performance by the conductor of his duty in this respect.

What would be the effect, if the conductor's check contained words limiting in effect the right of the passenger, as existing under

37

the ticket and coupons, in the event of the attention of the passenger being called to such limitation, whether in that case it would call upon him to assert the right thus affected, or be held to have abandoned it, is not a question in this case, for it does not appear that the conductor's check in question contained words of that character. While it is true that, if a passenger claims anything under general usage, or under the rules and regulations of a particular road, in excess of what he has a right to demand under his contract, he must take it in subordination to such usage and rules. Yet, when his contract gives him a clear right, subject to no contingency, he cannot be deprived of that right, either under a rule established by general usage, or by the particular road, in the absence of timely notice of such rule. Applying these principles to the instruction asked, and the charge given in lieu of it, it is clear that the instruction asked was defective in charging the passenger with knowledge of the import of the check, upon the ground of general usage alone, and in making it a ground of negligence on his part, not to have enquired as to the import and value of the check. It is equally clear that the view taken by the Court was correct, both as it regards the duty of the passenger and the conductor, and the inapplicability of the instruction to the case, there being no facts in proof tending to fix on the plaintiff a charge of neglecting any act essential to the preservation of rights under his ticket.

The seventh exception brings up an instruction asked by defendants and refused, which is as follows : "That if the plaintiff had a separate coupon from Charlotte to Columbia, and another from Columbia to Augusta, and he intended, at the time he was called upon by the conductor for his ticket, to stop over at Columbia, it was an act of negligence in him to allow his coupon from Columbia to Augusta to be torn off." The Court declined so to charge, and charged the contrary. The eighth exception contains an instruction, asked and declined, as follows : "That if the plaintiff had a separate coupon from Charlotte to Augusta, then it was an act of negligence for him to stop over at Columbia without having been assured by the conductor that the check given him would pass him on another train." The sixth, seventh and eighth exceptions seek to charge the plaintiff with negligence. To give any meaning to the idea of negligence thus advanced, it would be necessary to suppose that at the time when the conductor called upon the plaintiff for his coupons, some duty was imposed on the plaintiff, the negligent performance

of which deprived him of his right to stop over at Columbia. According to the sixth exception, this negligence consisted in not ascertaining that he had proper evidence of his right to stop over. According to the seventh exception, it consisted in his allowing the conductor to take up the Columbia and Augusta coupon. If in either of these cases any negligence occurred, it was in respect to some duty that the plaintiff owed himself, and not as to any duty in which the defendants are concerned, and therefore, it is not a matter that can be alleged by them as enuring to their advantage. The plaintiff had rights fixed under his contract, and unless his conduct amounted to an abandonment or modification of these rights, such as the defendants would take advantage of, it is unimportant whether he was vigilant or remiss in detecting an infraction of such rights. What might have been the consequence, had it been made to appear that the plaintiff took the conductor's check with knowledge that the conductor had committed an error, is not necessary to be considered, for there is no evidence tending to prove such a state of facts. If there was negligence in stopping over at Columbia without inquiry as to his right to resume his journey on the next day, it was not incident to any duty due to the defendants, and they cannot therefore complain of it. It is very clear that the conductor had no right to take up the coupon from Columbia to Augusta before Columbia was reached, unless he placed the plaintiff in as good a condition as before, by giving a check or token evidencing his right to stop over at Columbia, and to take a subsequent train; but this only leads to the conclusion that plaintiff had a right to assume that the conductor's check given to him was sufficient for that purpose. Such being the case, he was not bound to protest against or resist the removal of the Columbia and Augusta coupon.

The instruction asked that is the subject of the ninth exception, is as follows: "That the regulation of the defendants, requiring a passenger, with a through ticket, who gives up his coupon to a point beyond another point at which he wishes to stop, to obtain from the conductor a lay-over ticket, is a reasonable regulation." This instruction was refused, "unless the regulation be accompanied by a farther regulation, that the conductor shall inform the passenger." It will not be necessary to examine the conclusions of the Circuit Court as to this instruction, for the regulation in question has no application to the present case. It was obviously intended to cover the case of a passenger desiring to stop at some point intermediate to the initial and terminal point of a single coupon. In such a case

we must assume that the right to stop at such intermediate point would depend on the regulations of the road, and not upon the contract which allows stoppages only at the points to and from which coupons run. It cannot be construed as applying to a case where the passenger has the right, by the terms of his contract, to stop at a particular place; nor can it be applied either to the initial or terminal points of a coupon. Neither can the regulations of the road consolidate the coupons into one, as against the right of the passenger, under the terms of his contract, to treat them as distinct parts of his journey.

The tenth exception questions the authority of the agent at New York to sell two coupons between Charlotte and Augusta. But the fact that the defendants recognized the ticket, and allowed the plaintiff finally to perform the journey called for by it, was such a ratification of the act of the New York agent as to render immaterial evidence of the nature of the instructions under which the agent acted. This instruction is unimportant to the case, for this reason. The charge, were it erroneous in this respect, could not have affected the verdict to the prejudice of the defendants.

The eleventh exception has no application to this case. The position of the plaintiff is, that under their contract the defendants were bound to convey him from Columbia to Augusta, after having stopped at Columbia. The entrance of the plaintiff into the train, with the portion of his ticket remaining in his hands, and a conductor's check from Charlotte to Augusta, was a clear demand for the performance of the part of the contract the breach of which is alleged.

The twelfth exception was charged as requested by the defendants, and is not before us for review.

The thirteenth exception is already disposed of by what has gone before.

That portion of the charge brought into view by the fourteenth and sixteenth exceptions, so far as it is applicable to the present case, is in conformity to the views already expressed, and is free from error.

The remaining exceptions, namely, the fifteenth and seventeenth, raise the question whether the rule of exemplary damages was appropriate to be submitted to the jury. If the defendants could, under no such circumstances, be subjected to exemplary damages for the misconduct of the conductor, or, if there were no facts in the case to characterize the conduct of the conductor as malicious,

oppressive, or reckless of the rights of the plaintiff, then the sub-mission of the rule of exemplary damages was erroneous, as it would tend to mislead the jury as to their duty in the case.

The question, whether a corporation is liable to respond in exem-plary damages for the misconduct of an agent, has not been settled in this State. It will be considered on reason and authority, so far as it affects the relations of a common carrier to his passen-ger, where there has been an abuse of authority over the person of the passenger, conferred by the carrier upon his agent, acting in his stead in the performance of the contract to convey with safety. The right of a common carrier to eject a person from his conveyance by personal force can have no other foundation than that which justifies the lawful occupant of a house from ejecting therefrom, in like manner, an unlicensed intruder or trespasser. It is a conse-quence of dominion over property. As the exercise of this right, accompanied with force, involves a restraint of the liberty of another, it is a delicate power that should be scrupulously guarded from abuse. The imposition of exemplary damages is a means pe-culiarly fitted to prevent abuses of this power, and when applied to cases of this character, ought to be regarded as accomplishing more than merely setting an example for the benefit of the community at large, and as covering redress of an injury to the right of personal liberty distinguishable from all that class of personal grievances properly embraced within the legal rule of compensatory damages. Where such powers are delegated, the sanction under which they are exercised should not be diminished. Nothing would be more dangerous than to allow such powers to be conferred on an irrespon-sible person, possibly a ruffian, leaving the persom communicating such authority exempt from part of the legal consequences that ought to be attached to their abuse. If public policy allows exem-plary damages, in order to deter persons clothed with such authority from abusing it, there is equal reasons for allowing them as a pen-alty for the delegation of such powers to an improper person.

It will be found, upon examination of the authorities, that while much difference of opinion has been called forth by the discussion of the general question of the liability of corporations, to exemplary damages, for the misconduct of agents, yet that no case is in conflict with the limited basis of the question above stated. *Goddard* vs. *Railroad*, 57 Maine, 202.—In this case the general liability of a railroad company, as a common carrier, for misconduct of an agent towards a passenger under his charge, is established to the extent of

allowing exemplary damages.   The same rule was applied in *Railroad* vs. *Dunn,* 19 Ohio, 162.

*Ward* vs. *Railroad,* 17 N. Y., 362.—In this case the question of exemplary damages was not considered by the Court of Appeals, though it appears to have been raised by plaintiff on the trial. *Railroad* vs. *Hinds,* 55 Penn., 512.   This case holds that it is the duty of the railroad company to protect the lives and persons of passengers, as against riotous conduct of other passengers, so far as the means are at hand so to do.   The concurrence in the common carrier of a certain right of control over the person of his passenger, with the duty of protecting him from unlawful force from third parties, is suggestive of a relation calling for the application of the rule, *qui facit per alium facit per se,* carried to its fullest extent, so as to transfer to the principal all the legal consequences that ought to flow from the act of the agent.

*Railroad* vs. *Jinney,* 10 Wis., 383.—This case has been regarded as an authority against the allowance of exemplary damages against a corporation for the act of its agent, without proof of direct authorization or ratification ; but such is not the effect of the case.   The refusal to apply the rule of exemplary damages, in that case, was based on the fact that the conductor had no authority to remove passengers from the cars, the Court holding that such delegation of authority must be proved, and could not be inferred from knowledge of the general practice of railroads.   This case is in strict accord with the idea that where such a delegation of authority exists in the hands of an agent, liability to exemplary damages, on the part of the principal, will follow an act of gross, malicious or wanton abuse in the hands of such agent.

*Turner* vs. *Railroad,* (34 Cal., 594.)—The rule of exemplary damages was refused in this case, on the ground that it did not appear that the defendant had either authorized or ratified the act of the conductor.   It does not assume the position, that a special act of authorization or ratification was essential.   It is entirely consistent with the idea that a general delegation of authority would support the application of this rule.   On examining the report of the case, it will be observed that it does not appear, anywhere, that the conductor had authority to remove passengers from the cars.   The case cannot be hostile to a proposition, that announces as the basis of its conclusion, that there must be a delegation of power of control over the person of the passenger.

*Hill* vs. *Railroad,* 11 Louis., 292.—The rule of compensatory

damages laid down in this case was strictly applicable to the case, there being no circumstance to justify the allowance of exemplary damages.

*Amiable Nancy*, 3 Wheat., 546.—Exemplary damages were refused in this case, as against the owners of a privateer, for an injury unlawfully committed by the privateer while under the control of the agent of such owners. This decision is based on the peculiar nature of the privateering service. It is enough to distinguish that case from the principle under consideration, that there the powers exercised by the agent were war powers, not derived from the owners of the vessel, but from the government under whose laws the vessel sailed. An abuse of such powers would lead to different consequences, from an abuse of powers belonging, of common right, to common carriers.

*Railroad* vs. *Quigly*, 21 How., 202.—Exemplary damages are allowed against a corporation for the malicious publication of a libel, under authority of its Board of Directors. Directors can be regarded in no other light than as agents of the corporation, and it is impossible to avoid the conclusion that this authority upholds the general proposition that a corporation may be held repsonsible in exemplary damages for the malicious act of its agents done in the course of its business.

Thus it will be found that the current of decisions supports the proposition under consideration.

It is clear that there were circumstances rendering it legally possible, that the jury might conclude that the conductor, in removing the plaintiff from the train, was influenced by an intent to injure, degrade or oppress him. Among these circumstances are the facts that the ticket and check, exhibited to the conductor, tended to show that it was a case of mistake, and not of a design to defraud the company; that the plaintiff exhibited willingness to do all in his power in order to accede to what he considered an unjust demand; for, although without money to pay the fare demanded, he offered to secure its payment by pledging his baggage; and the fact that the plaintiff was put off at an inconvenient place— the jury had a right to say whether the act was reasonable and wholly influenced by a sense of duty to his principal, or whether it was a harsh and tyrannical exercise of authority, conceived in a spirit of hostility or prejudice against the plaintiff, or in reckless and wanton disregard of rights respected by the humane spirit of our laws. Power to remove a passenger from a public conveyance

should be lodged in the hands of the persons in charge of such conveyances. But it ought always to be regarded as the last resort, and its exercise ought not to be justified where all considerate and just minds revolt from it as an act of cruelty. All the powers of common carriers over their passengers are subject to the limit of reasonableness, and an act that offends the sense of public justice and propriety cannot be justified as a lawful exercise of the authority of a common carrier over the person of his passengers. The rule of exemplary damages was proper to the case. There being no error in the rulings or charge of the Circuit Court, the motion for a new trial should be denied, and the appeal dismissed.

*Moses*, C. J., and *Wright*, A. J., concurred.