WEED and another *v.* THE PANAMA RAILROAD COMPANY.

It is no defence to an action against a railroad corporation for its failure to transport a passenger with proper despatch, that the detention was the willful act of a conductor in charge of the train.

It is immaterial whether a breach of contract result from the negligence or the willfulness of the defendant's agent, if his act is within the scope of his employment and authority.

Weed *v.* The Panama Railroad Company.

APPEAL from the Superior Court of New-York city. The action was brought by husband and wife to recover damages for breach of duty by the defendant as a carrier of passengers, whereby the wife was injured in her health. On the trial before Mr. Justice OAKLEY and a jury, it was proved that in August, 1854, the plaintiffs were passengers on a train of cars of the defendant from Obispo to Aspinwall, about thirty miles distant. The train proceeded about seven miles on the route, to a place called the Barbacoas Switch, where it was detained during a night, and did not reach Aspinwall until the afternoon of the day following. There were about four hundred passengers on the train, who remained in the cars during the night, from inability to procure other accommodations. The weather was stormy, and the wife was taken sick in the night and experienced great suffering. Much evidence was given tending to prove that in consequence of the detention her health was greatly and permanently injured.

In summing up, the plaintiffs' counsel insisted that the evidence established that the conductor designedly left the train at the Barbacoas Switch, having that intention when he left Obispo, and that for this reason exemplary damages might be given. He claimed damages on the ground of willful misconduct and negligence. The counsel for the defendant asked the court to charge the jury that if the conductor acted willfully in the detaining of the train the defendant was not liable for that, as there was no evidence that defendant authorized or approved such misconduct. The justice refused so to charge, and to such refusal the defendant's counsel excepted. The justice then directed the jury, among other things, that although they should find that the conductor acted willfully in the detention of the train, the defendant would not for that reason be entitled to a verdict; to which the defendant's counsel excepted. The justice, after delivering his charge, directed the jury to answer the following questions, which were submitted to them in writ-

ing : First. Was the detention at the Barbacoas Station, by the conductor of the defendant, a willful act of the conductor? Second. In detaining the train as he did there, did the conductor act negligently or without reasonable care and judgment? The counsel for the defendant excepted to the submission of the first question to the jury. The jury answered each of these questions in the affirmative, and rendered a verdict for the plaintiffs, assessing damages at $2,000. Judgment was suspended and a case made which, in pursuance of a direction at the close of the trial, was argued at a general term, where judgment was rendered for the plaintiffs on the verdict. The defendant appealed to this court.

*James T. Brady*, for the appellant.

*A. J. Willard*, for the respondents.

STRONG, J. The principal question in this case is, whether the defendants are liable for the detention of the train producing damages to the wife, although the detention was the willful act of the conductor, neither authorized nor approved by the defendants. The obligation of the defendants, from receiving the wife on their train of cars to be carried to Aspinwall and proceeding with the train part of the distance, to carry her to that place with all reasonable diligence, is not disputed by them and admits of no doubt. ( *Story on Bailm.*, § 545 ; *Wibert v. New-York and Erie Railroad Company*, 2 *Kern.*, 253.) Nor is it claimed by them that detention and delay on the route, from the mere negligence of the conductor or other servants of the defendants connected with the management of the train, occasioning damage to the wife, would not be a breach of the obligation for which the defendants would be responsible ; but they insist that their obligation is not broken and that they are not liable for the willful act of the conductor followed by

such a result; and they invoke in support of their position the rule, well sustained by principle and authority, that a master is not liable for a willful trespass of his servant.

It is important, therefore, to inquire whether that rule extends to a case like the present, and for that purpose, to consider the basis on which it is founded. The reason of the rule clearly appears by the cases in which it has been declared and applied. Among those cases, *McManus* v. *Crickett* (1 *East*, 106), is a leading one; and that was an action of trespass for driving a chariot against a chaise in which the plaintiff was riding, whereby the plaintiff was thrown from his chaise and hurt. It appeared at the trial, that a servant of the defendant, in the absence of and without the direction or assent of the latter, willfully drove the chariot against the chaise; and the question was, whether for that willful and designed act of the servant an action would lie against the defendant, his master. The court held it would not. Lord KENYON, who delivered the opinion, says, "it is laid down by HOLT, C. J., in *Middleton* v. *Fowler*, (*Salk.*, 282), as a general position, 'that no master is chargeable with the acts of his servant but when he acts in execution of the authority given him.' Now when a servant quits sight of the object for which he is employed, and without having in view his master's orders, pursues that which his own malice suggests, he no longer acts in pursuance of the authority given him, and according to the doctrine of Lord HOLT, his master will not be answerable for such act." The ground of the decision was, that the act complained of was wholly without the sphere of the servant's duties, and that in the commission of it the servant was not acting in his master's business; that in reference to that act, he was not the servant of the defendant; and that the defendant could not be held liable for a wrong which he had neither committed, nor authorized nor adopted.

*Wright* v. *Wilcox* (19 *Wend.*, 343), is a similar case. The action was brought for an injury to the son of the

plaintiff in being run over by a wagon driven by one of the
defendants, a son of the other defendant, while in the employ-
ment of the latter. At the trial, the judge charged the jury
that both defendants were answerable, whether the injury
was willful or only attributable to negligence. On a motion
for a new trial, which was granted, COWEN, J., who gave
the opinion, says, if the act was willful the master "is no
more liable than if his servant had committed any other
assault and battery. All the cases agree that a man is not
liable for the willful mischief of his servant, though he be
at the time, in other respects, engaged in the service of the
former." After citing several cases, he adds: "Why is a
master chargeable for the act of his servant? Because
what a man does by another, he does by himself. The act is
within the scope of his agency." He says, "the authorities
deny that when the servant willfully drives over the man he
is in his master's business. They hold it a departure and
going into the servant's own independent business."

*Richmond Turnpike Co.* v. *Vanderbilt* (1 *Hill*, 480), is a case
of the like character—a collision of steamboats—and the
judge in the court below refused to charge the jury that if
the servant of the defendants willfully produced the collision
the defendants were not liable. The plaintiff recovered,
and the judgment was reversed by the Supreme Court,
which held that if the collision was willful on the part of
the defendant's servant, the defendant was not liable, refer-
ring to *Wright* v. *Wilcox*. After another trial, the case
came into this court (2 *Com.*, 479), where the doctrine applied
in the Supreme Court was sanctioned; and it was further
held that the corporation was not liable, although the willful
act producing the injury was authorized and sanctioned by
the president and general agent thereof. The reason of the
decision, stated in the opinion delivered by CADY, J., is in
substance, that a general or special agent, when he commits
or orders a willful trespass to be committed, acts without the
scope of his authority. In *Hibbard* v. *The New-York and*

*Erie R. R. Co.*, in this court (15 *N. Y.*, 455, 467, 468), the opinion is advanced by one of the members of the court, that for an excess of force in removing a passenger from a train of cars, in a proper case for removal, by the servants of a railroad corporation, the servants and not the corporation are responsible. Another member of the court expresses the opinion that if the removal was unauthorized, the only remedy is against those by whom the act was done. The doctrine of the cases above cited is stated and fully discussed in *Story on Agency*, §§ 456 to 462; and the rule and the reason of it are thus given: " But although the principal is liable for the torts and negligences of his agent; yet we are to understand the doctrine with its just limitations, that the tort or negligence occurs in the course of the agency. For the principal is not liable for the torts or negligences of his agent in any matters beyond the scope of the agency, unless he has expressly authorized them to be done, or he has subsequently adopted them for his use or benefit. Hence it is that the principal is never liable for the unauthorized, the willful, or the malicious act or trespass of his agent." All the cases on the subject, so far as I have observed, agree in regard to the principle of the rule, and also in limiting the rule to that principle. For acts of an agent within his authority, the principal is liable, but not for willful acts without his authority. (*Phil. & Read. R. R. Co.* v. *Derby*, 14 *How. U. S. R.*, 468).

In the light of this examination of the class of cases which has been considered, it cannot fail to be seen that there is an important difference between those cases and the one before the court. The former are cases of willful, unauthorized, wrongful acts by agents, unapproved by their principals, occasioning damage, but which do not involve nor work any omission or violation of duty by their principals to the persons injured; wrongs by the agents only, with which the principals are not legally connected. In the present case, by means of the wrongful, willful detention by the

conductor, the obligation-assumed by the defendants to carry the wife with proper speed to her destination, unless this willful wrong of the conductor was an excuse to them, was broken. The real wrong to the wife in this case, and from which the damage proceeded, was the not carrying her in a reasonable time to Aspinwall, as the defendants had undertaken to do; and this was a wrong of the defendants, the carriers, unless the law excused them for their delay on account of the misconduct of their agent. It is for this alleged wrong of the defendants in not performing their duty as carriers with reasonable diligence, from which injury has been experienced, that this action was brought; and the only question in relation to the point under consideration would seem to be, whether they can defend themselves by showing that the delay on the route was the willful wrong of one of their servants. The jury have found, as necessarily included in their general verdict for the plaintiffs, that the defendants did not use due diligence; but they have also found, in answer to a special inquiry, that the detention to which it was owing was a willful act of the conductor. Upon these findings, connected with the exceptions to the refusal of the judge to charge that if the conductor acted willfully in detaining the train the defendants were not liable and charging the contrary, the question must be whether the fact that the detention was a willful wrong of the conductor at all varies the law of the case.

Viewing the general question, as it appears to be clear we must, as being whether the defendants have discharged their duty as carriers, and the particular point of inquiry, whether the circumstance that the detention was a willful act of their servant will excuse what would otherwise be a want of proper diligence, this part of the case is relieved from difficulty. If the detention had resulted from negligence of the conductor, the liability of the defendants would be unquestionable. A master is answerable for negligence of his servants in the performance of their duties. (2 *Kent Com.,*

601, 602.) STORY, in his Treatise on Agency (§ 452), says: "It is a general doctrine that a principal is liable to third persons, in a civil suit, for the frauds, deceits, concealments, misrepresentations, torts, negligence and other malfeasances or misfeasances and omissions of duty of his agent in the course of his employment, although the principal did not authorize or justify or participate in or indeed know of such misconduct, or even if he forbade the acts or disapproved of them," &c. "In every such case, the principal holds out his agent as competent and fit to be trusted, and thereby, in in effect, he warrants his fidelity and good conduct in all matters within the scope of his agency." ( *Story on Bailm.*, §§ 400–406 ; *Stokes* v. *Saltonstall*, 13 *Pet.*, *U. S. R.*, 181.) No reasons exist for holding a master liable for injuries from negligence of his servants in his employment, which do not equally and with like force preclude him from alleging an intentional default of a servant as an excuse for delay in the performance of a duty the master has undertaken. In the former case, the negligence of the servant is that of the master, and that is the ground of the master's liability; in the latter, the act of the servant is the act of the master, constituting negligence of the master; the motive of the servant making no difference in regard to the legal character of the master's default in doing his duty. The obligation to be performed was that of the master, and delay in performance, from intentional violation of duty by an agent, is the negligence of the master.

In the present case, the defendants, as carriers, were bound to carry the wife the entire journey with reasonable dispatch, but the conductor stopped the train on the route unreasonably, in known disregard of his duty; the defendants did not send it forward as it was their duty to do, providing another conductor if that was necessary, and that was negligence of the defendants. It must be assumed, in the absence of any finding or even proof to the contrary, that it was

practicable for the defendants to forward the train without injurious delay.

I am satisfied, for the reasons stated, that the rule of law relied on by the defendants to sustain their position, which has now been considered, is inapplicable to the case.

It is made a point by the defendants that judgment could not properly be rendered against them, for the reason that the findings of the jury that the detention was a willful act of the conductor, and also that in detaining the train he acted negligently or without reasonable care and judgment, are inconsistent with each other; but in the view I have taken of the case, whether the act was willful or negligent makes no difference as to the liability of the defendants; in either aspect the judgment was right.

HARRIS, J., did not sit in the case : all the other judges concurring,

Judgment affirmed.