## TYLER TERM.

CRITTENDEN CHANDLER v. DANIEL DEATON.

(No. ——, Op. Book No. 1, p. 151.)

APPEAL from Cherokee County.　Opinion by WHITE, J.

§ 488. *Master liable for acts of servant, when; respondeat superior, doctrine of; applies also to principal and agent.* Appellant's son shot two of appellee's mules while getting them out of appellant's field into which they had broken. The son was a minor and living with appellant and working for him, under his control and superintendence, and assisted appellant in driving and keeping stock out of the field, and drove and kept stock out when appellant was absent. Appellant had advised and ordered his son not to shoot other people's stock, and appellant was not present when the mules were shot. Appellee recovered judgment in the court below for his damages. *Held*, from this state of facts, when carefully considered in the light of the well established principles of law applicable to such cases, we see no room to question the liability of the father, in the premises, for the act of the son. At the time of the shooting the relation in which the parties stood to each other was that of master and servant, or if not, then of principal and agent, rather than parent and child. The law of master and servant and of principal and agent in such cases is, in its leading features, the same. There is no such rule of law as that the master is not liable for the wrongful and wilful acts of his servant, though such doctrine has often been propounded in judicial opinions. There are many cases in which a master must be held liable for such acts, and there are numerous decisions holding him so liable which commend themselves to every man's sense of justice.

[17 N. Y. 362; 10 Wis. 388; 98 Mass. 577; 23 Mich. 298.] The true ground upon which a master avoids liability for most of the wilful acts of his servants, when unauthorized by him, is that such acts are not done in the course of the servant's employment. When they are so done the master is liable for them. [Shearman & Red. on Neg. § 65, p. 83.] "Where a contingency occurs which justifies the servant in using violence, yet, if he uses unnecessary violence, or resorts to it in a time or a manner which make its consequences unnecessarily injurious, the master is liable, notwithstanding any precaution he may have taken in his instructions to avoid the occurrence of such excessive or ill-timed use of the power intrusted to the servant." [Id. p. 84.] "Even the wilful disobedience of the servant does not necessarily exonerate the master; . . . and when a servant is employed to do a certain act, and is especially forbidden to adopt a particular method of doing it, yet wilfully adopts that method, the master is nevertheless liable for injuries thereby caused to third persons, if the servant did the forbidden thing as a real means for the performance of his master's work." [Id. § 68, p. 88 ] In Luttrell v. Hazen, 3 Sneed (Tenn.), 20, Caruthers, J., thus defines the rule: "It is not necessary that the principal or master should expressly direct or have knowledge of the act done; it is enough that the servant or agent was acting in the business of his superior." In Southwick v. Estes, 7 Cush. 385, Shaw, C. J., said: "A servant may do a great damage to another person in the negligent and careless performance of his master's service, though against the master's will and contrary to his orders; yet this is a ground of action against the master." "And so where the defendant permitted his infant son to take a gun to drive slaves from the defendant's cane patch, but cautioned him not to fire so as to hit any one; the son fired at one of the trespassers and killed him; there was evidence that the son did not intend to take the negro's life. *Held*, that the defendant (father) was responsible;" and Evans, J.,

in delivering the opinion of the court in that case, said: "According to all the authorities, if a servant, in the course of his employment about his master's business, do any act whereby the property of another is injured, the master is liable." [Priester v. Angley, 5 Rich. Law, 44.] The similarity and oneness of these principles, and the rules which obtain in like cases between principals and agents, may be seen from the following extracts from Mr. Story's standard work on Agency: "It is a general doctrine of law that, although the principal is not ordinarily liable (for sometimes he is) in a criminal suit for the acts and misdeeds of his agent, unless, indeed, he has authorized or co-operated in those acts or misdeeds, yet he is held liable to third persons in a civil suit for the frauds, deceits, concealments, misrepresentations, torts, negligences and other misfeasances and omissions of duty of his agent in the course of his employment, although the principal did not authorize or justify, or participate, or, indeed, know of such misconduct, or even if he forbade the acts or disapproved of them. In all such cases the rule applies of *respondeat superior*." [Story on Agency, § 452.] "But although the principal is thus liable for the torts and negligence of his agent, yet we are to understand the doctrine with its first limitation, that the tort or negligence occurs in the course of the injury; for the principal is not liable for the torts or negligence of his agent in any matters beyond the scope of the agency, unless he has expressly authorized them to be done, or has subsequently adopted them for his own use or benefit." [Story on Agency, § 456; R. R. Co. v. Hanning, 15 Wallace, 657.] In harmony with this rule, limiting the liability of the principal, it was held in Kansas that, "where a minor son lives with his father and is under his father's control, commits certain wrongful acts, but where the said acts have not been authorized by the father, are not done in his presence, have no connection with the father's business, are not ratified by the father, and from which the father derives no benefit, the father

is not liable in a civil action for damages for such wrongful acts." [Edwards v. Crume, 13 Kan. 348.] After discussing in an able and masterly manner the doctrine of *respondeat superior*, and reviewing and criticising the apparent conflict in some of the leading authorities, Mr. Justice Wheeler, delivering the opinion of our supreme court in the case of Echols v. Dodd, 20 Tex. 191, says: "This is the true test by which to determine the liability of the master in all cases like the present: Was he (the servant) at the time he did the act complained of acting in the course of the service ? If so, the master is responsible; but if not, if he had stepped out of the course of the service, the master is not responsible."

October 20, 1876.                    Affirmed.