BRIDGET FLANAGAN, as Administratrix, etc., Respondent, *v.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, Appellant.

*Supreme Court, Second Department, General Term, February* 10, 1890.

1. *Negligence. Passenger.*—A passenger is entitled to have sufficient time in which to get from the car to the ground.
2. *Same.*—The stopping of the train out of the usual place for the alighting of passengers is improper.
3. *Same.*—Where the train did not stop long enough to permit passengers without bundles to alight, and there were no lights, and the intestate, who carried bundles, was discovered in an injured condition as though he had been dragged, the jury can infer from the facts, that the cause of the injury was the sudden starting of the cars, for which the defendant was liable.
4. *Appeal. First instance.*—Where an objection can be obviated, if made at the time, it is too late to raise the question on an appeal.

Appeal from judgment in favor of plaintiff for $5,000 and from order denying motion for a new trial on the minutes.

Action to recover for the death of plaintiff's intestate.

*Henry W. Taft*, for appellant.

*M. J. Keogh*, for respondent.

BARNARD, P. J.—The case shows that Cornelius F. Flanagan, deceased, was a passenger on the defendant's railroad in January, 1886, from Mt. Vernon to Pelhamville. When the train reached Pelhamville it was very dark. The train stopped so short a time that a passenger without bundles

could scarcely get off before the train started up. The deceased was incumbered with packages, and was found so injured that he died the next day. His packages were lying about the place where he was hurt, which was very much to the eastward of the usual place of stoppage. The rule of duty upon the defendant as to the passengers is so plain and well settled as to need no authority. The deceased was entitled to have sufficient time in which to get from the cars to the ground. The proof shows that this was not done. The witness Spark testifies that the train started so quick that he had not sufficient time to get upon the platform of the station and let go the support of the iron brace of the car before the train started and gave him a jerk from the quick motion. He was the only passenger who got off at the end of the car in which he was riding.

The deceased was in a forward car and no one testifies that he saw him get off, but he was found mortally wounded by the cars with marks as if he had been dragged in this condition. The jury can easily infer that this accident was caused by the sudden starting of the cars under the evidence given. The stopping of the train out of the usual place was improper. It accounted for the haste in starting. The train run so fast in the station that it could not stop in the usual place. Besides this it was proven that there were no lights east of the station where the train actually stopped, and it was competent to show that the defendant furnished no light at the place where the passengers were required to leave the car.

It is too late to raise the question as to the letters of administration. The answer only denies knowledge and belief, and the trial proceeded as if the plaintiff was administratrix. The rule is well settled that when an objection can be obviated if made at the time, it is too late to raise the question after an appeal.

The judgment should, therefore, be affirmed, with costs.

DYKMAN, J., concurs.

PRATT, J. (dissenting).—This case is barren of any proof as to how Flanagan came to his death, and, therefore, the plaintiff failed to establish that the deceased at the time he was killed was in the exercise of due care.

It seems to me that the most reasonable inference to be drawn from the proofs in the case was that the deceased attempted to alight from the train while it was in motion.

The place where blood was and the articles with which he was incumbered were found, indicate that he did not attempt to get off of the train until after it had started.

Under these circumstances, the natural instinct of self-preservation alone is not sufficient to establish the affirmative issue of due care.   How the accident happened is left entirely to speculation.

The rule for such cases is laid down in Tolman *v.* S. B. & N. Y. R. R. Co., 98 N. Y. 198, as follows: " In an action for negligence causing death the burden of establishing affirmatively freedom from contributory negligence is upon the plaintiff, and while, although there were no witnesses of the accident, and although its precise cause and manner of occurrence are unknown, absence of contributory negligence may be established sufficiently to make it a question of fact for the jury by proof of such facts and surrounding circumstances as essentially indicate or tend to establish the fact that the accident might have occurred without negligence on the part of the deceased, yet if the facts and circumstances coupled with the occurrence of the accident do not indicate or tend to establish the existence of some cause or occasion therefor which is consistent with proper care and prudence, the inference of negligence is the only one to be drawn and defendant is entitled to a nonsuit."

The only reasonable inference to be drawn from all the testimony is that the deceased did not attempt to get off with the other passengers who stopped at the depot, but remained on the car until after the train started and fell under the car while it was in motion.   This seems to be the only theory consistent with all the facts.

On the evidence as it stood at the close of the case the question of due care on the part of the deceased was purely speculative, and ought not to have been submitted to the jury as a question of fact.

As this point goes to the merits of the case no other exception need to be considered.

Judgment reversed and a new trial ordered, costs to abide the event.

Judgment affirmed, with costs.

NOTE ON "DUTIES AND LIABILITIES OF CARRIERS OF PASSENGERS."

*Utmost care required.*—Passenger carriers bind themselves to carry safely those whom they take into their coaches, as far as human care and foresight will go, that is to the utmost care and diligence of very cautious persons. Wynn v. Central Park, etc., Co., 38 St. Rep. 181; Maverick v. Eighth Ave. R. R. Co., 36 N. Y. 378; Bowen v. N. Y. C. R. R. Co., 18 Id. 408; Deyo v. Same, 34 Id. 9. The carrier is bound to provide a safe and secure carriage for the transportation of passengers. Nothing can exempt him from this responsibility but the existence of some latent defect against which no reasonable degree of human skill and foresight can guard. This obligation belongs to every species of appliance belonging to, and used by, the carrier in the business in which he is engaged. Id. Whenever it appears that the accident occurred through some defect in the vehicle, or other apparatus used by the carrier, a strong presumption of negligence arises, founded upon the improbability of the existence of any defect which extreme vigilance, aided by science and skill, could not have detected. Id. Where an injury is received from a derangement of anything employed by the carrier, the presumption necessarily arises that there exists somewhere an imperfection in the machinery employed, or negligence in its operation. Id. It is for the carrier, then, to show the facts relieving it from responsibility in the particular case. It is not for the passenger to ascertain the particular defect. Id.; Curtis v. Rens. & S. R. R. Co., 18 N. Y. 534.

Where a situation is shown which could not have been produced except by the operation of abnormal causes, the onus is then upon the carrier to prove that the injury was caused without its fault. Seybolt v. N. Y., L. E. & W. R. R. Co., 95 N. Y. 562. The question for the jury, in such case, is whether the presumption of negligence has been sufficiently negatived by the evidence introduced by the carrier. The burden of explaining the cause of the accident rests upon him. Id.

Where the presumption of negligence has been established against a carrier of passengers in an action for damages resulting from an accident, it can only be rebutted by proving that the accident resulted from circum-

stances against which human prudence and foresight could not guard, and that it could not be averted by such precautions as would be dictated by the utmost care and prudence of a very cautious person before the accident, and without the knowledge that it was about to occur.   Bowen *v.* N. Y. C. R. R. Co., 18 N. Y. 408.

A carrier of passengers for hire, by its contract, is bound to use the utmost diligence possible to secure the safe transportation of the passenger. Chase *v.* Jamestown S. R. R. Co., 60 Hun, 582.

To that end, it must furnish carriages of the most approved construction, and keep them in perfect repair, so far as human skill and foresight can provide.   Id.   This obligation extends as well to means and appliances for discharging passengers as for transporting them.   Id.

In the case last cited, the plaintiff, while alighting from an open car, was thrown down and injured by her dress catching in the broken guard of a wheel box which projected from under the seat.   She was following other passengers, and did not know, or have suspicion, of this defect.   And it was held that, if the wheel box or guard in question was out of repair in such manner as to be liable to trip or throw down a passenger alighting from the car, that fact, of itself, constituted negligence which would, so far, charge the company.

The fact that a structure is not built or controlled by the carrier is immaterial.   Birmingham *v.* Rochester, etc., R. R. Co., 59 Hun, 583.   If it is adopted and employed by it as one of the appliances, by means of which its business of transporting passengers is carried on, it is chargeable with all the defects of the structure, whether original or resulting from wear and tear, whether latent or patent to the same extent as though it had been constructed by the carrier itself, or owned and controlled by it.   Id.   This conclusion results from the nature of the contract between the carrier and the passenger.   Such contract is to carry safely, barring accidents against which the utmost human skill and foresight are powerless to provide.   Id. It includes not merely an assurance that the utmost skill and foresight shall be employed to secure the safety of the passenger during the act of transportation, but a guaranty that the same degree of skill and foresight has been employed in the selection and construction of the machinery and appliances used for the purpose of such transportation.   Id.   In other words, the carrier of passengers contracts, not only for its own skill and care in the conduct of the business, but for the skill and care of all those who have made or furnished any of the instrumentalities or appliances by means of which the business is conducted.   Id.; Palmer *v.* D. &. H. C. Co., 120 N. Y. 170; Carroll *v.* Staten I. Co., 58 Id. 126; Hegeman *v.* Western R. R. Co., 13 Id. 9.

In Birmingham v. Rochester, etc., Co., *ante*, a horse railroad company obtained and exercised the privilege of laying its tracks over a bridge crossing the Erie Canal, which was owned and constructed by the state.   This bridge was a lift-bridge operated by hydraulic machinery, and had been imperfectly balanced when originally constructed.   The defect was remedied by the state by the construction of counter-weights in the form of iron

troughs loaded with pig-iron, and suspended at the top of the bridge over the carriage way and railroad tracks. While a passenger of the company was passing over the bridge a stirrup supporting the trough broke and the passenger was injured by the falling iron. It was held that the company was liable. By the use of the bridge, the company made it a part of the superstructure of its road, and was as much responsible for its safe condition as for that of any portion of its tracks. So it has always been held in respect to railroads employing leased lines, or the right of trackage on the lines of the other roads. Id. It is to the company contracting for his transportation, and not to the company upon whose lines the cars of the former are run, to which the passenger may look for compensation for an injury resulting from a defective road. Where the carrier acquires or assumes the privilege of laying its track over a bridge belonging to the state, it is no less responsible to its passengers for the safe condition of the structure than if it had been of its own construction. Id.

While a railroad company is not an insurer of the safety of its passengers, it is bound to use a high degree of skill and vigilance to guard against accidents which may be attended with injurious consequences to them. Palmer *v.* D. & H. C. Co., 120 N. Y. 170. This duty is not discharged without the utmost care and diligence which human prudence and foresight will suggest to secure the safety of its passengers. Id. And this vigilance is to be exercised by the company, in seeing that its road and appliances used in operating it are and remain in good condition and free from defects. A latent defect, which will relieve it from responsibility, is only one against which no reasonable degree of human skill and foresight could guard. Id.; Hegeman *v.* Western R. R. Co., 13 N. Y. 9; Bowen *v.* N. Y. C. R. R. Co., *ante;* Brown *v.* Same, 34 Id. 404; Caldwell *v.* N. J. S. Co., 47 Id. 282. This measure of responsibility is deemed essential to the proper protection of passengers, who must necessarily rely wholly upon the precautionary care and diligence of the carrier, so far as their safety depends upon the condition of the road, and the means provided for their conveyance. Id.

When an appliance is made to be put upon a car, it is the duty of the company to apply the known tests, to ascertain whether it is, in all respects, fit for the purpose it was intended to serve. Id. If, in consequence of the failure to do so, the defect is not discovered and an accident occurs, the company is responsible. Id. This question was considered in the Hegeman and Caldwell cases before cited.

The view which a carrier of passengers may have of what is, or is not, essential by way of inspection of its road and appliances, is not necessarily conclusive, though entitled to consideration upon the inquiry whether the system is adequate to the demand of duty upon the vigilance of the company. The same degree of care and watchfulness is not alike requisite to all of the various portions of the machinery and appliances. The apparent necessity for frequency of examination is somewhat dependent upon the liability to impairment and the consequences which may be apprehended as the result of defective conditions. Id. But whether the system and the manner of its execution are all that may be required of the carrier

can not be measured by any rule of the law to be applied by the court. I.l. It must, in view of the circumstances, be one of fact for the jury to determine, upon proper instructions relating to the degree of care imposed upon the company. While it is true that the question of the fact so presented is somewhat speculative, in the sense that it is not measure 1 by any definite rule, it must nevertheless become a matter of judgment to be expressed by the jury when found upon the evidence. Id.

It is sometimes asserted that the earlier rule as to the degree of vigilance required of a railroad company in the conveyance of its passengers, is not sustained by the later adjudications, and reference is made to some cases. It may be observed that those cases do not relate to the machinery or the appliances or apparatus, which constitute and sustain the operative means of conveyances and transportation, but to other structures provided by the carrier and the manner of their construction, and to which a less degree of care is applicable. Such are the cases of Hayes *v.* Forty-second St., etc., 97 N. Y. 259; Lafflin *v.* Buffalo, etc., Co., 106 Id. 136; Kelley *v.* N. Y. & S. B. R. R. Co., 109 Id. 44; Palmer *v.* Penn. Co., 111 Id. 488; Kelley *v.* Manhattan R. Co., 112 Id. 443. The general doctrine of the earlier cases in this state on the subject does not seem to have been modified by the later ones, but has quite uniformly been approved so far as applicable. Coddington *v.* Brooklyn C. R. R. Co., 102 N. Y. 66; Palmer *v.* D. & H. C. Co., *ante.*

If a passenger presents himself before the signal to start is given, the cars must remain motionless until he has entered. Hickinbottam *v.* D. L. & W. R. R. Co., 15 St. Rep. 11. It is the duty of the company to see to it that no one is injured in the exercise of the right of boarding the cars. The carrier of passengers and vehicles propelled by steam is bound to use every precaution which human skill, care and foresight can provide. Id. If the train is stationary, and no signal is given of the intention to start, it is not negligence to enter it. If any other rule was to prevail, no matter how negligent the employes of the company might be in starting the train, the passenger would be guilty of negligence in attempting to board it, though the train was standing apparently waiting for passengers to enter. Id.

It is a matter of common knowledge that it is unsafe for passengers to ride on the platform of a running train. Graville *v.* Man. R'y Co., 105 N. Y. 525. By so doing, they expose themselves and the other passengers to unnecessary danger. The law exacts of carriers of passengers the highest degree of care for their safety. Id. The control of trains is necessarily placed in the hands of employes. It is impossible to foresee all the exigencies which may demand prompt action on their part to avert danger or accident. The safety of passengers on railroads requires that they should comply with reasonable regulations, and acquiesce in reasonable directions of persons, to whom the management of the train is committed. Id. It is obvious that the crowding of passengers on the platform of a steam railroad car may seriously embarrass the trainmen in the performance of their duties. It is the plain duty of a passenger standing on a platform to go inside the car when requested so to do by a person having charge of a train. Id. The fact that there are no unoccupied seats in the car does not change

the duty of the passenger in this respect. If he has any well founded ground of complaint against the company for not providing adequate accommodations for passengers, this does not release him from the duty of leaving the platform and going inside the car, though there is standing room only. Id. Whether, on the passenger's refusing to comply with the request of the employe to go inside the car, the latter is authorized to use force to compel him to do so, is a distinct question. Id.

The law imposes an obligation on a railroad company to take reasonable care that a passenger shall, while on its premises, be exposed to no unnecessary danger or one of which it is aware, and requires it to provide for him a safe passage to the train. Carpenter *v.* Boston & A. R. R. Co., 97 N. Y. 494.

A company is bound to exercise the utmost vigilance not only in guarding its passengers against careless interference by others, but even against violence. Id. If, in consequence of neglecting this duty, the passenger receives an injury, which, in view of all the circumstances, might have been reasonably anticipated, the company is liable. Id. But it is not responsible where the mischief is one which it has no reason to expect, and against which it is under no obligation to guard. Id. But if it is made to appear that he who made the assault is vicious and accustomed, under similar circumstances, to do harm, and the company has been notified of the fact, a duty is imposed upon it either to remove him from the car, or inform its other passengers of their danger. Failing to do so, it would be responsible for such injury as he occasions. Id.

In the case last cited, the plaintiff, having purchased a ticket, went upon the platform prepared for passengers at the defendant's depot for the purpose of taking a train which was approaching. A postal car was attached to the train. As it passed the platform, the postal clerk, an employe of the United States, threw out a loaded mail bag. This bag struck and injured plaintiff. It appeared that this had been for a long time the customary method of discharging mail bags from postal cars at said depot, at times when passengers were upon the platform, and under circumstances from which notice to the defendant might be fairly implied. The defendant had taken no precaution to prevent injury. And it was held that the fact that the postal agent was not in defendant's employ did not relieve it from liability; and that it was not necessary, in order to charge the defendant with the duty of care and vigilance, to show that on some former occasion a like injury had happened. The act was itself dangerous. The injury could have been foreseen. The defendant owed a duty to those who might probably be on the platform, either to prohibit the practice which made the place dangerous, exclude the passengers until train time, provide some other way for ingress to the cars, at least give notice to them that they must take care and avoid the danger, or in some other way use reasonable caution to prevent injury from the danger, of which it knew or ought to have known. Id.

*Wilful misconduct of servants.*—Among the obligations, which the contract of carriage imposes upon the carrier, are, to protect the passenger

against any injury from negligence or willful misconduct of its servants while performing the contract, and of his fellow passengers and strangers, so far as practicable, to treat him respectfully, and to provide him with the usual accommodations and any information and facilities necessary for the full performance of the contract upon the part of the carrier.   Dwinelle v. N. Y. C. & H. R. R. R. Co., 120 N. Y. 117.   And these obligations continue to rest upon the carrier, its servants and employes, while such contract continues and is in process of performance.   Id.; Thorpe v. N. Y. C. & H. R. R. R. Co., 76 N. Y. 402; Stewart v. Brooklyn & C. R. R. Co., 90 Id. 588; Parsons v. N. Y. C. & H. R. R. R. Co., 113 Id. 355.   Such are the ordinary duties and obligations between the passenger and the carrier.   Id.

Where a passenger purchases a ticket for a passage on an ordinary car, and a ticket for a berth in a sleeping-car on the same train, the porter of the sleeping-car is, in the performance of the duties and obligations of the railroad company under its contract, the servant of the company, though it does not own the sleeping-car or hire or pay the porter.   Dwinelle v. N. Y. C. & H. R. R. R. Co., ante.   This question has been definitely settled by the highest court of this state and of the United States.   Thorpe v. N. Y. C. & H. R. R. R. Co., ante ; Penn. Co. v. Roy, 102 U. S. 451.

The law will not permit a railroad company, engaged in the business of carrying persons for hire, through any device or arrangement with a sleeping-car company whose cars are used by the railroad and constitute a part of its train, to evade the duty that is imposed upon it by law.   Dwinelle v. N. Y. C. & H. R. R. R. Co., ante.   The defense that the porter is not the servant of the railroad company, but of the sleeping or drawing-room car company, is not a defense to the former company.   Id.   The persons in charge of the drawing-room car are to be regarded and treated, in respect to their dealings with passengers, as the servant of the railroad company, and the latter is responsible for their acts to the same extent as though they were directly employed by it.   Id.

In Thorpe v. N. Y. C. & H. R. R. R. Co., ante, the court of appeals held that chap. 125 of 1858, which authorizes railroad, sleeping and drawing-room companies to make contracts of the character above mentioned, carefully provides that it shall not be construed to exonerate the railroad company from the payment of damages for injuries in the same way and to the same extent as though the cars were owned and provided by the railroad company.

In Dwinelle v. N. Y. C. & H. R. R. R. Co., ante, an action was brought to recover damages inflicted upon the plaintiff while a passenger on defendant's road, by the porter of a sleeping-car.   The plaintiff purchased tickets for himself and wife for a continuous passage in one of defendant's ordinary cars.   He also purchased from the porter tickets for a section in the sleeping-car in the same train.   There was no other person acting as conductor.   The sleeping-car tickets were taken up by the said porter.   The train was detained by a washout, and, after waiting for some time, said porter informed plaintiff that he must take another train.   The porter conducted the plaintiff and his wife to a sleeping-car in the other train.   But;

upon finding it filled, he conducted them into an ordinary car, where there were no vacant seats.  Upon plaintiff's requesting him to return the sleeping-car tickets, or procure for him something to show that he was entitled to a section in a sleeping-car to his place of destination, the porter refused to do so and turned to go away.  Thereupon the plaintiff touched him lightly on the arm, saying to him that he must not leave without some satisfaction.  Upon this, the porter struck the plaintiff a violent blow in the face, knocking him down and injuring him.  Upon the trial, the complaint was dismissed.  This was held to be error, as the question whether the porter was engaged in the performance of his duties as defendant's servant, at the time of inflicting the blow, should have been submitted to the jury.

The passenger is entitled to all necessary information to enable him to pursue his journey with safety and dispatch.  He has often been held guilty of contributory negligence, which would relieve the carrier from liability, in case of his omission to make such inquiries.  Id.

If it is the duty of the passenger to make inquiry, it is the corresponding duty of the carrier to give the information sought.  Id.

The duty of protecting the personal safety of the passenger and promoting, by every reasonable means, the accomplishment of his journey is continuous, and embraces other attentions and services than the occasional service required in giving the passenger a seat or some temporary accommodation.  Id.  Whatever is done by the carrier or its servants, which interferes with, or injures the health or strength or person of, the traveler, or prevents the accomplishment of his journey in the most reasonable and speedy manner, is a violation of the carrier's contract.  Id.

The idea that the servant of a carrier of persons may, in the intervals between rendering personal services to the passenger for his accommodation, assault the person of the passenger, destroy his consciousness and disable him from further pursuit of his journey, is not consistent with the duty that the carrier owes to the passenger.  Id.

While this general duty rests upon the carrier to protect the person of the passenger during the entire performance of the contract, it signifies but little or nothing whether the servant has or has not completed the temporary or particular service he was performing when the blow was struck. Id.  If the blow is given by a servant of the carrier while it is performing its contract to carry safely and protect the passenger, it is a violation of such contract.  Id.

The carrier is liable for the willful and malicious acts of its servants toward or upon a passenger.  Dwinelle *v.* N. Y. C. & H. R. R. R. Co., *ante.* In Stewart *v.* B. & C. T. R. R. Co., *ante*, the court says: "By the carrier's contract with the plaintiff it had undertaken to carry him safely and to treat him respectfully, and, while a common carrier does not undertake to insure against any injury from every possible danger, he does undertake to protect the passengers against any injury from the negligence or willful misconduct of its servants while engaged in performing the duty which the carrier owes to the passenger.  A common carrier is bound, so far as practicable to protect his passengers, while being conveyed, from violence

committed by strangers and co-passengers, and he undertakes absolutely to protect them against the misconduct of its own servants engaged in executing the contract," or as otherwise therein expressed, " from an assault committed upon a passenger by a servant entrusted with the execution of the contract of a common carrier." See also, Weed *v.* P. R. R. Co., 17 N. Y. 362. No matter what the motive is which incites the servant of the carrier to commit an unlawful or improper act toward the passenger during the existence of the relation of carrier and passenger, the carrier is liable for the act and its natural and legitimate consequences. Dwinelle *v.* N. Y. C. & H. R. R. R. Co., *ante.*

An act which will amount to a breach of the carrier's contract, if negligently done, will be equally a breach if done willfully and maliciously. Stewart *v.* Brooklyn & C. R. R. Co., *ante.* It is immaterial whether a breach of contract results from the negligence or willfulness of the carrier's agent. Id.; Weed *v.* Panama R. R. Co., 17 N. Y. 362. It is the injury that is suffered by the passenger while in the carrier's car, and not the motive which induced it, that constitutes the gist of the action. Id. No reason exists for holding a master liable for the negligence of servants in his employment which does not with equal force preclude him from alleging intentional default of the servant as an excuse for not performing a duty which he has undertaken. Id. In the former case, the negligence of the servant is that of the master, and that is the ground of the master's liability. In the latter case, the act of the servant was the act of the master. The motive of the servant makes no difference in regard to the legal character of the master's default in doing his duty. Id. It is the carrier's failure to carry safely and without injury that constitutes the breach, and it is no defense to say that the failure was the result of the willful or malicious act of the servant. Id.

A rule, which shall make the carrier liable when the act resulting in the injury is carelessly, but unintentionally done, and exonerates him when the injury is the result of the intentional act of the servant, will lead to most absurd results. Id. By such a rule, a stage company, who shall place a lady passenger under the protection of its driver, to be carried over its route, will be liable if, by his unskillful driving, he upsets the coach and injures her. But if, taking advantage of his opportunity, he shall assault and rob her, the carrier will go entirely free. So if the porter of a sleeping-car, employed to guard the car while the passengers sleep, shall himself fall asleep, or, abandoning his post, allow a pickpocket to enter and rob the passengers, the company will be liable. But, if the guardian shall himself turn pickpocket and rifle the pockets of the passengers, the company will not be responsible for his acts. Id. But rather, as the carrier selects his own servants and agents, he must be held to warrant that they are trustworthy as well as truthful and competent. Id. In every such case, the principal holds out his agent as competent and fit to be trusted, and thereby, in effect, warrants his fidelity and good conduct, in all matters within the scope of his agency. Id. A railway company is bound to employ none except capable, prudent and humane men. Id.

For violations of their rights, passengers have their remedy on the contract of carriage. Id.

In Isaacs *v.* Third A. R. R. Co., 47 N. Y. 122, the case was discussed and determined upon the assumption that the rule of the master's liability for the assault of a servant committed upon a person to whom the master owed no duty, was applicable to that case. The mind of the court was not directed to the fact that such rule does not apply to the case of an assault committed upon a passenger by a servant entrusted with the execution of a contract of a common carrier.

A carrier of passengers, by its contract of carriage, assumes an absolute obligation to protect the passenger as well against the willful, as the negligent, acts of its servants. Smith *v.* Man. Ry. Co., 45 St. Rep. 865; Stewart *v.* Brooklyn & C. T. R. R. Co., *ante ;* New Jersey S. Co. *v.* Brockett, 121 U. S. 637. Because the passenger boards the train in a manner forbidden by its rules, its servants are not justified in inflicting injuries upon him. Smith *v.* Man. Ry. Co., *ante.*

Undoubtedly, the company has authority to enforce observance of its regulations; but only by preventing, not by punishing, the breach of them. Id. It has no power of retribution, and is incapable of compelling a conformity to its rules by the imposition of a penalty. The ejecting of a passenger for an act already accomplished involves a forfeiture of his right to be carried on that train. Id. Only by present or prospective, and not by past, misconduct, does a passenger lose his privilege. Id. A passenger does not forfeit his right to safe transportation by the mere fact of getting aboard in a manner contrary to a rule of the carrier. Id.

In New Jersey S. Co. *v.* Brockett, *ante,* a passenger voluntarily put himself in a place from which the rules of the company excluded him. While there, he was assaulted by the company's servants. It was held that, nevertheless, the company was bound to furnish him safe transportation, and to indemnify him for injuries caused by its servants' improper conduct. The adjudication that the wrongful presence of the passenger at a forbidden locality on the vehicle does not forfeit his right to transportation negatives the proposition, that his right to carriage, when aboard, is lost by a breach of a regulation in getting aboard. Smith *v.* Man. Ry. Co., *ante.* If, after such irregular boarding, the passenger leaves the car and again enters it in a proper manner, he has a right to safe conveyance by that train. Id. An attempt to eject him is an outrage upon him, and for injuries sustained thereby, he may maintain an action against the carrier. Id.

A common carrier of passengers undertakes to protect the passengers from the negligence or willful misconduct of its servants while engaged in performing a duty which the carrier owed to the passengers. Scott *v.* Central Park, etc., Co., 53 Hun, 114. But it has not as yet been held that where a passenger by his own misbehavior, while being transported, has provoked a personal encounter between himself and one of the employes of the carrier, the carrier is liable for the result. Id. It is true that the use of abusive language to the servant does not justify the assault, as

far as the servant is concerned, in the eyes of the criminal law. But there is no reason for holding that, where a passenger, by his own improper and insulting behavior, brings upon himself an assault, the carrier should be responsible. Id. While carriers are to be held to the strictest responsibility, and must treat their passengers respectfully and protect them so far as they reasonably can from injury or insult on the part of their employes, there is also a responsibility on the part of the passenger. Id. He is bound to conduct himself in an orderly and decent manner. And if he forgets his obligations, and by his indecent behavior, and by the use of language which is morally certain to end in a personal encounter, he succeeds in his efforts to bring about such a result, the carrier certainly cannot be bound to protect the passenger under such circumstances from the natural and probable consequences of his own act. Id.

Where the act of the servant is not in the course of his employment, the carrier can only be held under the rule that, as the passenger must commit himself to the custody of the employe of the carrier, the carrier must be responsible even for the willful acts of the employes which result in a trespass against the passenger. Id. But the reason of such a rule can have no application to a case where the trespass is brought about by the improper behavior of the passenger. Id.

The duties of the carrier and the passenger are reciprocal. The carrier is bound to protect the passenger, and the passenger, in order to entitle himself to such protection, is bound to behave himself in a decent and orderly manner. Id.

*When reasonable care is sufficient.*—The courts have applied to common carriers very rigid and exacting rules, calling for the highest degree of care and diligence in matters pertaining to the construction of machinery and mechanical appliances necessary for the transportation of passengers. Bruswitz *v.* Netherlands A. S. N. Co., 46 St. Rep. 623. This rule is so applied for the reason that a neglect of duty in such a case is likely to result in great bodily harm, and sometimes death, to those who are compelled to use that means of conveyance. Id.

The reason for this rule in respect to machinery and mechanical appliances is, that passengers are compelled to rely solely upon the carrier, and have no opportunity to exercise their own judgment and discretion. Id. But in respect to those matters in which such judgment and discretion can be exercised, and in respect to cases where injuries result from other causes, the rule is thus stated: " Railroad corporations are not the insurers of the lives or safety of passengers upon their cars; and, in order to render them so, it is essential to show that they have neglected the performance of some duty which, in the exercise of reasonable care, prudence and diligence, they owe to such passengers." Id.

In the case last cited, a passenger on defendant's steamer, while going from his cabin through the dining saloon, on his way to the deck, tripped and fell with great force on the sockets fixed in the floor and used to support or secure the tables. He received severe injuries. The saloon, at the

time of the accident, was dimly lighted. The passenger was coming out of his cabin, with cigars in one hand, and, as he was about to close the door, the ship lurched and he slipped and fell on the sockets. The tables had been removed. The question presented by these facts is not whether there was any defect in the machinery or mechanical appliances necessary for the transportation of passengers, but whether the company was guilty of negligence in removing the tables when not in use by passengers so as to give them more space, and in leaving the sockets above the floor in the manner stated. For such causes, the carrier is not to be held to the strict rule which, in some cases, binds common carriers of passengers to the exercise of the utmost degree of care making them responsible for injuries arising from the slightest negligence. Id. The rule to be applied, in such cases, is, that the company is responsible for any loss or injury resulting from its failure to exercise reasonable care, prudence and diligence. Id.

In Palmer *v.* Penn. Co., *ante*, the plaintiff was a passenger on defendant's road. He, in the night-time, slipped and fell from the platform of a car and was injured. There was a thin covering of snow upon the platform and some slight spots of ice around its edges. Both of these had gathered during the trip. It had stormed during the night and the weather was cold and freezing. The platform was well constructed with proper and convenient steps, and with hand rails on either side. It was held that the facts failed to establish defendant's liability. In such case, the rule pertaining to the construction and maintenance of tracks and running machinery by railroad corporations, which holds them to the exercise of the utmost possible care in discovering and remedying defects therein, does not apply. Id. That rule is applicable to such appliances of the railroad as will be likely to occasion great danger and loss of life to the traveling public, if defects exist therein, on account of the velocity with which cars are moved, and the destructive and irresistible force which accompanies such motions.

It is quite impossible to lay down any general rule applicable to all circumstances, in respect to the degree of care to be observed by a company in the removal of ice or snow from its cars, and each case must be generally determined by its own peculiar circumstances. Id. It is safe to say, however, that such corporations should not be held responsible for the dangers produced by the elements until they have assumed a dangerous form, and the company has had a reasonable opportunity to remove their effects. Id.

While there is no case laying down the precise degree of care and diligence required of such corporations under such circumstances, yet it must be somewhat analogous to that imposed upon municipal corporations, in respect to the removal of snow and ice from public streets. Id. As to the degree of care required by the latter corporation, see Taylor *v.* Yonkers, 105 N. Y. 202; Kinney *v.* Troy, 108 Id. 570; Kaveny *v.* Same, Id. 572.

Persons are not free from the exercise of reasonable care and prudence in passing over places exposed to ice and snow in our climate, upon the assumption that a duty belongs to some other person to keep such place,

under all circumstances, absolutely free therefrom. Id. If they so suppose, they greatly mistake the legal obligations resting upon the parties respectively interested. Id.

In Kelly *v.* Man. R'y Co., *ante*, the plaintiff's intestate, in descending the stairway of a station on defendant's road, fell and was injured. The accident happened about half past five o'clock in the morning. There had been a storm of sleet and snow during the night. It commenced near midnight and continued until about four A. M. The stairway was covered, the roof projecting a foot on each side. It was provided with hand-rails and was inclosed at the sides up to the rail. Upon each step were pieces of rubber to prevent slipping. The rule in relation to the liability of railroad corporations for injuries sustained by passengers under such circumstances differs from that which obtains in the case of an injury to a passenger while he is being carried over the road of the corporation, and where the injury occurs from a defect in the road-bed, or machinery or in the construction of the cars, or where it results from a defect in any of the appliances such as would be likely to occasion great danger and loss of life to those traveling on the road. The rule, in the latter case, requires from the carriers of passengers the exercise of the utmost care so far as human skill and foresight can go, for the reason that a neglect of duty in such case is likely to result in great bodily harm, and sometimes death, to those who are compelled to use that means of conveyance. Id. As the result of the least negligence may be of so fatal a nature, the duty of vigilance, on the part of the carrier, requires the exercise of that amount of care and skill in order to prevent accidents. Id. But in the approaches to the cars, such as platforms, halls, stairways and the like, a less degree of care is required, for the reason that the consequences of a neglect of the highest skill and care, to which human foresight can attain, are naturally of a much less serious nature. The rule in such cases is that the carrier is bound simply to exercise ordinary care in view of the dangers to be apprehended. Id.

In Lafflin *v.* B. & S. W. R. R. Co., 106 N. Y. 136, a passenger was injured in stepping from a car to the platform, for the reason, as he asserted, that the platform was too far from the steps of the car. It was held that the company was not bound so to construct the platform as to make accidents to passengers using the same impossible, or to use the highest degree of diligence to make it safe, convenient and useful. It was bound simply to exercise ordinary care, in view of the dangers attending its use, and to make it reasonably adequate for the purpose to which it was devoted.

In Morris *v.* N. Y. C. & H. R. R. R. Co., 106 N. Y. 678, a passenger was injured by the falling upon him of a clothes wringer placed in a rack over his seat by another passenger. The court held the measure of care required of a carrier of passengers in such a case was not the highest care which human vigilance could give, but that the company was only to be held to reasonable care, to be measured by the circumstances surrounding the case.