Minshall, C. J.
The suit below was an action by Shields, a small boy, prosecuted by his next friend, against The Pittsburgh, Cincinnati & St. Louis Railway Company for an injury caused by the explosion of a torpedo, wantonly and negligently left on its track by one of its servants, at a point where the children and inhabitants living along the line of the track, were daily in the habit of passing with the knowledge and acquiescence of the company. The torpedo, a dangerous instrument, used by the company as a signal in the operation of its road, was picked up by a companion of the plaintiff, carried some distance away and caused to explode by one of them hitting it.' They were ignorant of its character, and at the time, trying to satisfy their curiosity about it. The same accident caused the injury for which the original action in Harriman v. Railroad Company, 45 Ohio St. 11, was brought, the judgment in which was reversed by this court, for error in sustaining a demurrer to the petition; and the petition in the Harriman case is substantially the same as in this case.
After the decision in. the Harriman case, the defendant below died an answer in this case, the second defense, of which and to which a demurrer was sustained, is as follows:
“ The defendant, for its second defense, says, that it carries upon its trains signal torpedoes to be used in addition to its regular signals, when, from fog or other cause, the other signals cannot be seen or relied upon, and that if said torpe *391 do was placed upon the track as alleged in said amended petition, by the employees of this defendant (a fact which defendant wholly denies), that then said employees placed the same upon the track, at a time and place in broad daylight, when and where there was no necessity for the use thereof, or of any signals of any kind whatsoever, and that said use was without the knowledge or consent or authority, express or implied, of the defendant; was against and contrary to its rules and regulations, as said employees well knew, and that said torpedo was so used by them outside and beyond the scope of their employment, and in no wise connected with the control, management or operation of said train of cars or railroad, and was so placed for the accomplishment of an independent and wrongful purpose of their own, in this, to wit: that said employees, or one of them, while said train was taking water at said water-tank, for the purpose of having sport with-some lady passengers who were upon said train, took torpedoes from the place where kept on said train, and without the knowledge of said lady passengers, with whom said employees were well acquainted, placed the same upon the iron rails of the track, in front of the wheels of the caboose in which said lady passengers were riding, with the intention to frighten them by the sudden and unexpected explosion of said torpedoes, which would result with a loud noise by the passage of the caboose over them; when said train started forward, one of said torpedoes failed to explode, and was found as stated in said amended petition.”
The sustaining of the demurrer to this defense is assigned for error. There is also an exception to the ruling of the court in refusing to charge as requested. But this ruling need not be noticed, as it presents simply the same question as is presented by the demurrer to the answer.
It would seem that the question raised by this defense, was presented by the demurrer to the petition in the Harriman case, and determined by the decision of this court therein. The fourth proposition of the syllabus being, in substance, that the railroad company was liable for the negligence of its *392 servant, in placing and leaving the torpedoes on its track at a point where the public, including children, were permitted to pass, “notwithstanding such negligent acts of the servant were wanton, reckless and needless.”
But the counsel for the plaintiff in error think that it was not, and claim that there is clear error in the case for the reason, that the act of the conductor in placing the torpedoes on the track, was a mere caprice of his own, outside of his employment as a servant, and contrary to the rules of the company; and that, therefore, the company is not liable.
We do not adopt this view, and shall show that the negligence of the conductor in this regard, though wanton and contrary to the rules of the company, occurred within his employment, and is, therefore, imputable to the company.
The law requires of persons having in their custody instruments of danger that they should keep them with the utmost care. 1 Hilliard on Torts, 3 ed., 127. “Sometimes,” says Pollock, “ the term ‘ consummate care ’ is used to describe the amount of caution required, but” he says; “it is doubtful whether even this is strong enough. At least, we do not know any English case of this kind (not falling under some recognized head of exception) where unsuccessful diligence on the defendant’s part was held to exonerate him.” Pollock on Torts, 407. See also, Wharton on Negligence, § 851.
And, it stands to reason, that one charged with a duty of this kind cannot devolve it upon another, so as to exonerate himself from the consequences of injury being caused to others by the negligent manner in which the duty in regard to the custody of such an instrument may be performed. Speaking of the absolute duty imposed by statute in certain cases, and, also, of the duties required by common law “ of common carriers, of owners of dangerous animals or other things involving, by their nature or position, special risk or harm to neighbors,” Pollock observes, “ the question is not by whose hand an unsuccessful attempt was made, whether that of the party himr self, of his servant, or of an ‘independent contractor,’ but whether the duty has been adequately performed or not.” Pollock on Torts, 64.
*393 We in no way limit, nor question the soundness of the general rule, which exonerates the master from liability for the acts of his servant done outside of his employment. What has been stated is strictly within the reason and principle of the rule, which is, that whatever the servant is entrusted by the master to do for him, must be done with the same care and prudence that would be required of the master, acting in that regard for himself; if it be the custody of dangerous instruments, he must observe the utmost care.
The inability of the master to shift the responsibility connected with the custody of dangerous instruments, employed in his business, from himself to his servants entrusted with their use, is analogous to, and may be said to rest upon the same principle, as that which disenables him from shifting to an independent contractor, liability fornegligence in the performance of work that necessarily tends to expose others to danger, unless the work is carefully guarded. It seems by the great weight of authority and reason that this cannot be done. See Railroad Company v. Morey, 47 Ohio St. 207, and cases there cited. Also, see, Lawrence v. Shipman, 39 Conn. 586, 589; and Cooley on Torts, 2d ed., 644, 646.
And the relation of master and servant and .that of employer and independent contractor, are, in this regard, treated in one view by Pollock in his work on Torts, as will appear from consulting his work at page 64.
Now, in this ease, it must be observed, that the duty entrusted by the railway company to the conductor in regard to these torpedoes was, not only to use them as signals with the requisite care and caution, but to observe like care and caution in the custody of them, when not in use. The servant’s custody of them, when not in use, was as much a part of his employment, as was the use of them as signals when required. In taking them from the place where they were carried when not in use, and, in mere caprice, placing them on the track for the purpose of frightening the ladies, he was not, it is true, within his employment as to the use of them; but, in so doing, he violated the duties connected with his employment as *the custodian of them, and thereby made his master liable *394 for the consequences of his neglect, in the same manner, and to the same extent, as if it had been done by the company itself.
It is necessary in this, and in all similar cases, to distinguish between the departure of a servant from the employment of the master, and his departure from, or neglect of, a duty connected with that employment. A servant may depart from his employment without making his master liable for his negligence when outside the employment of the master ; and he so departs whenever he goes beyond the scope of his employment and engages in affairs of his own. But he cannot depart from the duty entrusted to him, when that duty regards the rights of others in respect to the employment of dangerous instruments by the master in the prosecution of his business, without making the master liable for the consequences; for the first step in that direction is a breach of the duty entrusted to him by the master, and his negligence in this regard becomes at once the negligence of the master; otherwise the duty required of the master in respect to the custody of such instruments employed in his business, may be shifted from the master to the servant, which cannot be done so as to exonerate the master from the consequences of a neglect of the duty.
To better illustrate the ground of this distinction, we may, for example, suppose a servant, with others under his control, employed with a construction train repairing the track of his master. He may, for a time, quit his employment, and, with his men, go off on affairs of his own. Whilst thus out of the master’s employment, he may build a fire, which, through his negligence, may consume the property of another ; and, in the meantime, loss of life and property may result from a collision with the train negligently left standing on the track. Now whilst, as has been held, the master would not be liable for the loss resulting from the fire, because the act was done outside the servant’s employment, (Morier v. Railway Company, 31 Minn. 351,) yet it is equally certain that, for the loss occasioned by the servant’s negligence in leaving the train on the track, the master would be *395 liable in damages; for the plain reason that, in abandoning the custody of the train, he was guilty of negligence in the employment of the master, whilst, in building the fire, he was not.
That what was done by the conductor contravened the purpose and instructions of the company, in regard to the use of these torpedoes, does not vary its liability for the negligence of the conductor in the custody of them. In discussing the master’s liability for his servant, it is said by Professor Wharton, “ It is not necessary, in order to make the master liable, that there should be specific directions as to the particular act. It is enough if the general relation of master and servant, within the range of such act, exists. The question is simply whether the wrong inflicted was incidental to the discharge of the servant’s functions. It m'ay have been capricious. It may have contravened the master’s purposes or directions. But a master who puts in action a train of servants, subject to all the ordinary defects of human nature, can no more escape liability for injury caused by such defects, than can a master, who puts machinery in motion, escape liability, on the ground of good intentions, for injury accruing from defects of machinery. Out of the servant’s orbit, when he ceases to be a servant, his negligences are not imputable to the master. But within that orbit, they are so imputable, whatever the master may have meant.” Wharton on Negligence, §160; see, also, Wood on Master and Servant, 283; and Cooley on Torts, 632 (539*).
The custody of these torpedoes was within the servant’s orbit. Negligently leaving them on the track was a negligence within that orbit, and therefore imputable, to the master. If a master has a duty to perform and intrusts it to a servant, who disregards it to the injury of another, it is immaterial, so far as the liability of the master is concerned, with what motive or for what purpose, the servant neglects the duty. This is illustrated by the case of Wood v. Railroad, Company, 17 N. Y. 362, which was an action against the company for failure to carry the plaintiff to her destina-y tión with reasonable dispatch. , The delay was caused by the *396 willful act of the conductor in wrongfully detaining the train at a station; and which the defendant claimed exonerated it from liability. But the court held otherwise; it being observed, among other things, in the opinion, that “ The obligation to be performed was that of the master, and delay in performance, from intentional violation of duty by an agent, is the negligence of the master.”
We do not see that this, in any way, conflicts with, the decision in Railroad Company v. Wetmore, 19 Ohio St. 110. There the plaintiff got into a quarrel with the baggage-master of the company about checking his baggage; and, under the influence of anger, the latter struck the plaintiff with a hatchet, and it was held that the company was not liable for the injury. A hatchet is not an instrument of danger, within the rule above stated — it includes only such instruments as are such within themselves. The danger of a hatchet is in the hand and spirit of the man who may use it. If, in this case, the instrument left on the track had been a hatchet, the company would not have been liable to a child who might afterwards have picked it up and been injured by it. For the company would have been under no such duty as to its custody, as it was under in regard to this dangerous explosive.

Judgment affirmed.